In the Matter of David Joseph
YACKLEY, and Barbara Jane
Yackley, Debtors.

Harry A. WOOD and Ellen L.
Wood, Plaintiffs,

v.

David Joseph YACKLEY and Barbara
Jane Yackley, Defendants.

Bankruptcy No. 82–02342–SW.
Adv. No. 82–1570–SW.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

June 6, 1983.

**254**

Ray N. Fowler, Nevada, Mo., for plaintiffs.

Gene Thompson, Carthage, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING PLAINTIFF'S OBJECTION TO DISCHARGE ON CONDITION THAT DEFENDANTS TURN OVER CERTAIN PROPERTY AND INFORMATION TO THE COURT

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiffs complain for the defendants' denial of discharge in bankruptcy on the grounds of failure to schedule (1) 800 shares of the stock of C.P. Associates, Inc., 122 Lafayette Avenue, Laurel, Maryland, and (2) some $15,000 in inventory.[1] The court initially entered a default judgment denying the discharge in bankruptcy for failure of the defendants to comply with the pretrial orders of the court and for failure to respond to the court's order to show cause why default judgment should not be entered. Thereafter, the defendants moved to set aside the default judgment on the grounds of the excusable neglect of counsel. It is their contention that counsel believed that, because the court granted the

plaintiffs leave to file an amended complaint on January 11, 1983, the pretrial order would be amended and extended by the court. Admittedly, he did not notice that, in entering its order granting plaintiffs leave to file the amended complaint on January 11, 1983, the court explicitly provided that "(t)he pretrial order remains in effect." But, in the interest of justice and that of determining an action on its merits, which interests must be regarded as particularly applicable in determining the debtors' right to a discharge in bankruptcy, the court will set aside the default judgment and consider the merits of the action.[2]

The trial of the merits was conducted on April 1, 1983, in Joplin, Missouri. The evidence then adduced materially demonstrated that the defendants owned some 800 shares of stock of C.P. Associates, Inc., as of the date of bankruptcy; that its par value was $10 per share; that they had owned it since September 1971; that the defendant David Joseph Yackley had been president of C.P. Associates, Inc., from 1971 through 1978; that he then resigned as president and has had no contact with the corporation since that time, except to contact the current vice president in May or June 1982 to inquire about the value of the stock; that he did not have any other information to the contrary respecting the value of the stock; that he was then informed by the vice president in May or June 1982 that the stock was worthless; that, accordingly, when filing his petition in bankruptcy on April 6, 1982, he did not schedule the stock because he believed it had no value; that, prior to bankruptcy, he had, in prior proceedings, reported his inventory as having a value of $62,347; that he closed his business and did not continue it past July 24, 1982, and filed his bankruptcy petition on August 6, 1982; that the difference between the $62,347 earlier reported in inventory and the $45,000 in the schedules is accounted for, in the defendants' view, by "the differ-

---

**1.** For a more precise summary of the plaintiffs' objections to discharge of the defendants, see pages 255 and 256 of the text of this memorandum, *infra*.

**2.** Further justification for this action of the court appears below in the text of this memorandum.

ence between fair market value and book value"; that some $21,500 in Zenith floor-planned products were separately scheduled by defendants in schedule A–2; that the defendants own residential real estate in Vernon County which they occupy as their home which they scheduled as having a value of $40,000; that they arrived at this value by "talking with people as to its value"; that, in the course of the meeting of creditors in this case, David Joseph Yackley testified that the value of the same property was $60,000; that, according to the testimony of Edward L. Wade, a professional real estate appraiser produced by the plaintiffs as their expert on value, the value of the property may be as high as $62,500, although he admits that, in appraising the property, he was instructed by plaintiffs not to go onto the property and therefore found it "extremely difficult" to estimate its value under those conditions; that, according to the testimony of another professional appraiser, Homer W. Haggans, whom the defendants produced as their expert on value, the value of this real estate is approximately $40,000; that the Yackleys purchased the real estate for $43,000 on June 21, 1979; that, according to the testimony of George W. Dillard, the territorial sales manager of the Western Auto Supply Company, the inventory of the defendants' store "was somewhere around $50–60,000"; and that all the inventory was subject to security interests and was physically taken by the lienholders.

### Conclusions of Law

■ On the basis of the foregoing facts, it is asserted by plaintiffs that the denial of defendants' discharge in bankruptcy should be entered on two grounds, i.e., that "(d)efendants falsely and fraudulently concealed and mis-stated assets, in that they failed to set forth full, true and factual declarations of the value of certain assets" (see sections 727(a)(4)(A) and 727(a)(2) of the Bankruptcy Code) and that "(d)efendants failed to respond to court orders in a timely manner (see section 727(a)(6)(A) of the Bankruptcy Code). As to the first ground, however, the facts found above do not warrant a finding that there was any fraudulent concealment or fraudulent intention of the defendant in scheduling the assets in connection with these bankruptcy proceedings. As this court has pointed out on prior occasion, both of these species of grounds for denial of discharge require findings of a fraudulent intention by the debtors.[3] In this action, however, there is no extrinsic evidence of any fraudulent intention and the evidence does not otherwise show any clear false statement or concealment or even failure of the defendants to explain any diminution of assets. The loss and dwindling of inventory from $62,500 shortly before bankruptcy to $15,000 on the date of bankruptcy is ade-

---

**3.** "Under the applicable authorities, the 'intent to hinder, delay, or defraud' which section 727(a)(2), Title 11, United States Code, makes prerequisite to the denial of discharge is an actual intent which is equally subjective as that defined by the decisions rendered under section 523(a)(2) . . . ("In order to justify a refusal of discharge . . . it must be shown that the acts complained of were done with an intent to hinder, delay, or defraud . . . creditors. This intent, moreover, must be an *actual fraudulent intent* as distinguished from constructive intent." 1A Collier on Bankruptcy para. 14.-47(1), pp. 1410, 1411 (1978) (Emphasis added.) Cf. *In re Adlman,* 541 F.2d 999 (2d Cir.1976).") It was proper, therefore, to cite those decisions insofar as they aided in defining 'subjective' or 'actual' intent . . . . (T)he failure to schedule a worthless asset does not compel a finding that a ground exists for the denial of discharge. If the failure was not intentional, no ground for denial of discharge exists. 'Without proof of fraudulent intent, the specifications alleging this ground of objection must be dismissed. Failure to schedule . . . property belonging to the bankruptcy estate . . . is not necessarily "knowingly and fraudulently" concealing it.' 1A Collier on Bankruptcy para. 14.23, pp. 1328, 1328.1 (1978). The court is warranted in drawing an inference from the asset's lack of worth that its nonscheduling was unintentional. 'The failure to schedule apparently worthless debts and items of personal property of little or no value is ordinarily not accompanied by a fraudulent intent.' 1A Collier on Bankruptcy para. 14.23, pp. 1329, 1330 (1978). 'The fact that the property transferred or concealed is of small value tends to negative fraudulent intent.' *Id.,* para. 14.47, p. 1412." *Matter of Roberts,* Adversary Action No. 82–0785–3 (Bkrtcy.W. D.Mo. Dec. 13, 1982).

quately and without controversion explained by the defendants' assertion that lienholders recovered possession of the inventory otherwise not scheduled. No fraudulent intention appears in this regard and the plaintiffs do not point to any in their posttrial brief.[4] As to the failure to schedule the issue of stock, the only evidence of record which reflects on the defendants' intention is the uncontradicted testimony of the defendant David Joseph Yackley that he believed on the basis of conversations with others the stock to be of negligible value. It is not regarded as a duty of a debtor in bankruptcy to schedule worthless assets or those which are of little or negligible value.[5] The plaintiff, however, contends that the evidence of negligible value should be stricken as inadmissible hearsay, inasmuch as it is solely based on Mr. Yackley's testimony of having heard the estimates of negligible value from others who neither testified nor appeared in the trial of this action. But, if this evidence is inadmissible as hearsay on the issue of value of the property, it is neither hearsay nor inadmissible on the equally decisive issue of the debtors' state of mind.[6] And there is nothing, furthermore, to contradict its effect, which is to show that, in omitting the stock from the schedules, the debtors honestly believed that there were of little or no worth.[7]

The same principles apply to the issue of the value of the house. The evidence of value which is before the court at most establishes that those who have had an opportunity to assess value are uncertain of it. Their estimates range from $40,000 to $62,500. Thus, the debtors' selecting the lowest of this range of values to report on their schedules cannot be regarded as fraudulent when it so obviously is supported by some evidence, including that of the price at which they purchased the property. Nor can the fact that the debtor David Joseph Yackley later testified in the meeting of creditors that the property was of a value of $60,000 be viewed as evidence of a fraudulent intention as contradicting the earlier scheduled value of $40,000. For matters of opinion and belief are well known to be the subjects of honest change and vacillation from time to time and both values were, as noted above, supported by some evidence. Further, the fact that the higher value was disclosed by Mr. Yackley during the course of the bankruptcy proceedings warrants an inference of absence of intention to defraud. For such a disclosure should have provoked the trustee to investigate the value of the property for

---

**4.** In their posttrial brief, the plaintiffs advance other grounds for denying discharge in respect of the inventory. They complain that, although David Joseph Yackley and Barbara Jane Yackley scheduled their inventory at $15,000 on the date of bankruptcy, "Defendant David Yackley had sworn that, in June of the same year, their inventory was $62,347.00. When questioned concerning the obvious discrepancies in amount of inventory, the Defendant David Yackley repeatedly denied that he ever got, or kept, any report of inventory. Later, in direct contradiction to the previous testimony, David Yackley admitted to having subscribed to the Western Auto Bookkeeping Service of Dallas, Texas, and that information from this reporting service was used in reporting the amount of inventory at $62,347.00 in the (state) court. A detailed report of the $62,347.00 inventory was introduced as evidence during the hearing and is a part of the court records. Thus, the falsification of defendants' schedule B–2, and David Yackley's denial under oath of the existence of inventory records, constitute all the elements involved in perjury, namely, an intentional un-

truth in a matter material to an issue which is of itself material." But, in stating that the inventory was all repossessed by lienholders, the defendants have set forth a palpable explanation for its diminution. And the court will now grant them an opportunity to document this general explanation.

**5.** See note 3, *supra.*

**6.** "When it is proved that D made a statement to X with the purpose of showing the probable state of mind thereby induced in X, such as being put on notice or having knowledge . . . or to show the information which X had as bearing on the reasonableness or good faith of the subsequent conduct of X . . . , the evidence is not subject to attack as hearsay." McCormick on Evidence section 249, pp. 589, 590 (1972).

**7.** This is particularly so when the court must attempt to find the "subjective" or "actual" intent of the defendants in a case such as that at bar. See note 3, *supra.*

the purpose of taking into the estate all value in excess of the debtors' exemptions.

In summary, the evidence which has been adduced in this action falls significantly short of establishing the fraudulent intention which is necessary to prove the grounds here relied upon for denial of discharge. That penalty was not meant to be imposed for the kinds of understandable and explainable mistakes which are demonstrated by the evidence in the action at bar. Denial of discharge, rather, is intended to be reserved for outright dishonesty such as is not shown by the evidence in this action.

The bankruptcy court cannot, nevertheless, stand by and permit what once could be regarded as inadvertent withholding of property and information now be converted by judicial inaction into a condoned fraudulent withholding of property and information. In a similar vein, this court recently noted in *Matter of Roberts,* Adversary Action No. 82–0785–3 (Bkrtcy. W.D.Mo. Nov. 9, 1982), that:

> "(T)he debtor's conclusions respecting the status of his assets as of the date of bankruptcy are erroneous, even though palpably made in good faith. Accordingly, if he continues to withhold the value of the accounts receivable and of his bank account from the bankruptcy estate, there can be no lingering doubt as to his intent to hinder, delay and defraud the bankruptcy estate. The defendant must therefore, as a prerequisite to his discharge in bankruptcy, turn over all uncollected accounts receivable to the trustee in bankruptcy plus the sum of $3,000.00 which was collected after the date of bankruptcy within a reasonable time."

Accordingly, as a prerequisite to the actual granting of the discharge in bankruptcy, the debtors must turn the stock or such of its value as exceeds their allowable exemptions over to the trustee in bankruptcy and they must further submit documentary evidence to the court which will permit the court to conclude that the uncontradicted testimony that the inventory was repossessed by lienholders is supported by the documentary evidence which could reasonably be expected to exist. This includes the documents which evidence the validity and perfection of the lienholders' security interests, the balances then due to each of them and the goods repossessed by them and their value. On these conditions, it is appropriate, according to the foregoing findings, to deny the complaint objecting to the debtors' discharge in bankruptcy.

Finally, as to the plaintiff's second ground for denial of discharge—failure to comply with the court's pretrial order—this court hopes to effect the substance of justice, as opposed to its form, by requiring, as a precondition of discharge, the defendants now to produce the evidence respecting repossessions of inventory which they almost certainly would have prompted themselves to produce had they timely complied with the pretrial order.

Accordingly, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED That plaintiff's objection to defendants' discharges in bankruptcy be, and it is hereby, denied on condition that, within 30 days of the date of entry of this order or in such additional time as the court may grant for good cause demonstrated in writing within that 30 days, the defendants (1) turn over the stock or such of its value as exceeds their allowable exemptions therein to the trustee in bankruptcy and (2) file with the court and serve on counsel for plaintiff copies of documents supporting their claim of repossession of inventory by lienholders.