**In re Moti SAPRU, Debtor.**

**BANK OF INDIA, Plaintiff,**

v.

**Moti SAPRU ▮, Defendant.**

**Bankruptcy No. 184–40988–260.
Adv. No. 186–0021.**

United States Bankruptcy Court,
E.D. New York.

Feb. 15, 1991.

O'Melveny & Myers by Robin L. Dahlberg, Louis B. Kimmelman, New York City, for plaintiff.

Alan J. Weiner, New York City, for debtor and defendant.

CONRAD B. DUBERSTEIN, Chief Judge.

The plaintiff, Bank of India (hereinafter "the Bank" or "Plaintiff") moves for summary judgment pursuant to Fed.R.Civ.P. 56, made applicable to this proceeding by Bankruptcy Rule 7056, denying the debtor Moti Sapru (hereinafter "the Debtor") his discharge pursuant to 11 U.S.C. § 727(a)(4)(A). The Debtor cross-moves for summary judgment to dismiss the Plaintiff's complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Plaintiff's motion for summary judgment is granted, the Debtor's cross-motion is denied, and the Debtor's discharge is denied.

## FACTS

### a. The Relationship Between The Debtor And The Bank

In 1981, the Bank agreed to extend credit facilities to Indian Fantasy, Inc. ("Indian Fantasy"), a New York corporation which from 1978 until 1983 engaged in the importation and sale of clothing. The Debtor owns 100% of the stock in Indian Fantasy and is its president. Under the terms of the credit agreement, the Bank opened various letters of credit on behalf of Indian Fantasy to finance the importation of goods. Upon the arrival of these goods in the United States, Indian Fantasy executed trust receipts in favor of the Bank. Pursuant to the terms of the trust receipts, Indian Fantasy was obligated to repay the Bank for the sums advanced under the letters of credit plus interest and charges within a time period specified in the trust receipts. To induce the Bank to extend the aforementioned credit facilities, the Debtor executed and delivered to the Bank a continuing guarantee dated July 30, 1981 ("Guarantee"). Under the terms of the Guarantee, the Debtor guaranteed the payment of all obligations of Indian Fantasy to the Bank. Between 1981 and 1983 the Bank advanced over $1.5 million to Indian Fantasy pursuant to various letters of credit. Despite repeated oral and written demands by the Bank, Indian Fantasy failed to repay $724,310 of the advances made by the Bank. Demands upon the Debtor to pay Indian Fantasy's obligation to the Bank as required by the Guarantee were also unsuccessful. It is alleged in the complaint that Indian Fantasy and the Debtor as guarantor, is indebted to the Bank for at least $860,000.

### b. The Bankruptcy Case And Related Proceedings

As this case has been pending since 1984, it is useful to catalogue the events responsible for its prolonged life in this court.

On June 15, 1984, the Bank filed involuntary petitions for relief under Chapter 7 of the Bankruptcy Code (the "Code") against the Debtor, the Debtor's wife Sunita Sapru, and Indian Fantasy (collectively the "Debt-

ors"). After answers were interposed by the Debtors this court ordered that trials of the issues raised by the pleadings be held. Subsequent to that order counsel for the Debtor, Moti Sapru and counsel for the Bank engaged in settlement discussions as a result of which both sides agreed to adjourn the trial on a month to month basis. Orders for Relief were ultimately granted. The first meeting of creditors was scheduled for July 25, 1985. September 23, 1985 was set in each case as the last day to file objections to discharge or dischargeability of a debt.[1]

The first meeting of creditors scheduled for July 25, 1985 was adjourned to August 23, 1985 on the grounds the Debtor was not in the country and was adjourned again until September 20, 1985. At the § 341 meeting held that day, the Debtor swore to the veracity of the information contained in his petition, and the meeting was then adjourned to October 17, 1985 on the grounds the Debtor had yet to file schedules of his assets and liabilities ("Schedules") and statement of affairs for a debtor not engaged in business ("Statement of Affairs") pursuant to § 521 of the Bankruptcy Code. The Bank timely moved, and the Court granted its motion, to extend the time to object to the Debtor's discharge and the dischargeability of its debt from September 23, 1985 to December 19, 1985.

Two subsequently scheduled § 341 meetings were also adjourned to November 6, 1985, by which time on October 5, 1985, the Debtor's Schedules and Statement of Affairs were filed. However, on November 5, 1985, the Bank requested an adjournment of the § 341 meeting because it had not yet received copies of the Schedules and Statement of Affairs. The § 341 meeting was finally held on December 11, 1985. Due to various miscommunications, partly attributable to the Bank's failure to send letters confirming the adjourned date, the Bank

was not aware of the meeting and failed to attend. However, the meeting did proceed. The Debtor testified under oath as to his Schedules and Statement of Affairs upon his examination by the Chapter 7 trustee.

As of December 12, 1985, the Bank had not examined the Debtor and therefore again moved, and the Court granted its motion, to extend to February 28, 1986 the time to object to the Debtor's discharge and the dischargeability of its debt. Thereafter the Bank examined the Debtor at a § 341 meeting on January 15, 1986 and at an examination pursuant to Bankruptcy Rule 2004 on February 12, 1986.

### c. *The Bank's Attempts At Taking Discovery*

In addition to the difficulty encountered in attempting to orally examine the Debtor, taking discovery of the Debtor proved an onerous burden. As far back as the inception of this case the Bank began to seek discovery of the Debtor shortly after filing the involuntary petition in bankruptcy. The Bank had noticed a deposition for June 13, 1985. A first set of interrogatories and a first request for production of documents dated May 10, 1985 were also served. Additional requests for documents were made at the § 341 meetings by the Bank and the trustee. The Debtor failed to produce many documents requested, prompting the Bank to move for an order, which the Court granted on January 27, 1986, compelling the Debtor to appear for an examination and produce certain documents. Among the documents requested but not produced were certain federal and state income tax returns, and statements of account and cancelled checks from the Debtor's bank accounts with National Westminster Bank ("Westminster") and Citibank, N.A. ("Citibank"). The Bank also requested the business records of American Girls, Inc. ("American Girls")[2] as well as all doc-

---

1. Final decrees ordering the discharge of the trustee and closing the estate of Indian Fantasy and Sunita Sapru, who had previously received a discharge of her debts, were entered on March 24, 1987 and December 30, 1987 respectively.

2. American Girls, Inc. a corporation formed in 1984 was engaged in the garment business. The Debtor is its president and the Debtor's mother is its sole shareholder. As of July 1985, American Girls, Inc. was not doing business, however the Debtor acknowledged that this corporation

uments relating to the Debtor's relationship with American Girls which had not as yet been produced.

As the Debtor had not fully complied with the order of January 27, 1986, on September 18, 1986 this Court upon application of the Bank signed another order compelling the Debtor to produce documents which provided that the Bank and its attorney be awarded costs if the Debtor did not produce the documents.

On October 15, 1986, the Debtor applied for a protective order with regard to the production of the books and records of American Girls and cancelled vouchers and personal bank statements from Citibank and Westminster on the grounds that: (1) the documents sought were irrelevant since they concerned American Girls, an entity allegedly unrelated to this proceeding; and, (2) the time to object to discharge and dischargeability of debt had already passed and therefore the Bank could no longer use the information as further grounds to object to the Debtor's discharge or dischargeability of a debt. The Debtor's motion was denied.

■ On November 13, 1986, the Debtor again moved for a protective order preventing disclosure of certain documents on the grounds the information contained in the bank statements from Citibank and Westminster and the books and records of American Girls may contain incriminating information. After a hearing the Debtor's motion was denied on several grounds. First, the Debtor had voluntarily waived the right to claim the privilege with respect to the bank records by previously having produced substantial amounts of bank records.[3] Second, as for the books and records of American Girls, a corporate representative such as the Debtor may only claim a Fifth amendment privilege against producing corporate documents where the act of producing the documents would incriminate the corporate agent and, he would be conceding their existence or that he had possession or control.[4] In this case the Debtor had already admitted existence and possession of these documents.

Even after two orders to produce were signed and two motions for an order of protection were denied, the Debtor failed to produce many of the remaining documents. Therefore the Bank applied for an order which was signed on August 12, 1987 directing the issuance of *subpoenas duces tecum*, to both Westminster and Citibank requiring the production of certain documents. A second order signed October 26, 1987 directed the issuance of a *subpoena duces tecum* for service on Bankers Trust Co. requiring the production of certain documents.[5] On March 14, 1989 a request for admissions, interrogatories and requests for production and a notice of deposition were served on defendant. Subsequently the Debtor was scheduled to be examined on July 27, 1989. Answers to the Interrogatories and certain documents were produced in or around January of 1989. However the Debtor refused to testify at the scheduled deposition without a court order due to the long period of time which had elapsed with regard to these proceedings without the plaintiff putting this proceeding on for trial. No order for such relief was submitted to the Court.

### d. The Adversary Proceeding To Bar The Debtor's Discharge

Although the Debtor had not produced the remaining documents required by the

had accounts receivables approximating $20,000 which he was trying to collect.

3. *See In re Candor Diamond Corp.,* 42 B.R. 916 (Bankr.S.D.N.Y.1984).

4. *See Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *In re Two Grand Jury Subpoenas Duces Tecum,* 769 F.2d 52 (2d Cir.1985).

5. On or about September 15, 1987, National Westminster Bank informed the Bank's counsel

that prior to November 1984, the branch at which the Debtor maintained his account had been owned and operated by Bankers Trust Company. As a result, Westminster was only able to produce the Debtor's statements of account and cancelled checks from November 1984 to March 1985. Cancelled checks and statements of account from the Debtor's account prior to November 1984 were in the custody and control of Bankers Trust Company.

January 27, 1986 order, the Bank commenced this adversary proceeding on February 28, 1986 objecting to the Debtor's discharge on the grounds the Debtor had knowingly and fraudulently made false statements under oath with respect to this bankruptcy case.

On or about April 15, 1986, the Debtor filed an answer to the Bank's complaint. The Bank set down the trial for October 24, 1989 which was then adjourned to December 6, 1989. On December 6, it came to light that the Debtor had just received more requests for discovery from the Bank and had not yet had time to respond to them. It also became apparent that the Debtor was not going to testify at any proceeding. The parties then agreed that motions for summary judgment should be made and arranged a schedule for the exchange of briefs and supplemental briefs.

After many stipulations extending the time to file motions and cross-motions for summary judgment and supplemental briefs, this proceeding is finally ripe for disposition.

## THE GROUNDS FOR OBJECTION TO DISCHARGE AND THE DEBTOR'S DEFENSES AS CONTAINED IN HIS ANSWER

The Bank's complaint requests judgment denying the discharge of the Debtor pursuant to Section 727(a)(4) on several grounds.

First, the Bank claims that the Debtor knowingly made a false oath regarding his cash on hand. In schedule B–2(a) of his schedules of assets he states under oath that he had no cash on hand. At the section 341(a) meeting on or about January 15, 1986, he admitted under oath that although he did not remember precisely how much money he had in his bank accounts at the date of filing he had "maybe a couple of hundred [dollars]" in each account.

It is this Court's finding of fact that the foregoing allegations of the Bank are supported by the evidence.

By its answer, the Debtor argues that if there was a small amount of cash in either of these accounts, this cash would have been exempt property pursuant to the Bankruptcy Code and New York State Debtor & Creditor Law and therefore should not be a basis for denying his discharge. The Debtor also maintains that this money should not be a basis for denying his discharge because the Bank has not proven that the Debtor had any money in these bank accounts at the time in question.

Second, the Bank claims the Debtor knowingly made a false oath regarding his interest in an automobile. The schedule of assets does not reflect any interest of the Debtor in an automobile. At the § 341 meeting on January 15, 1986, he testified that he leased a 1984 Cadillac from General Motors for $270.00 per month. At a deposition of the Debtor taken on February 12, 1986, the Debtor stated he financed his purchase of the car in April of 1984, paid a deposit of $4,939.52 at the time of purchase and as of the date of the deposition he was current on all payments.

It is this Court's finding of fact that the foregoing allegations of the Bank are supported by the evidence.

The Debtor's answer admits that the Schedules are false with respect to statements concerning the Debtor's ownership of an automobile and that the Debtor made said statements knowingly. The Debtor denies the materiality of those statements, and argues that the Bank's failure to prove the Debtor had any equity in the Cadillac on the date of the filing of the petition has denied this Court the information necessary to determine whether the denial of the Debtor's discharge could be based upon his failure to include the automobile in his Schedules.

Third, the Bank claims the Debtor knowingly made false oaths concerning the value of the Debtor's insurance policies. The Schedules state that the Debtor had three insurance policies. Although he listed the policies of insurance in his Schedules and set forth their aggregate face value at $500,000, he failed to disclose the cash surrender value nor did his schedule of exempt property include such cash surrender value. During an examination of the Debtor

on February 12, 1986, he admitted that in January 1986 while the bankruptcy proceeding was pending, he had borrowed the cash surrender value of the policies, amounting to about $9,900.00, from the insurer to pay the insurer outstanding premiums on the policies.

It is this Court's finding of fact that the foregoing allegations of the Bank are supported by the evidence.

The Debtor argues that the aforementioned failure to set forth the cash surrender value in his schedules of exempt property is immaterial, and the Bank's failure to show that at the time of the filing of the petition the policies had any value would make it improper for the Court to consider this in determining whether the Debtor should be granted a discharge.

The Court notes that the Banks first three allegations charge the Debtor with concealment of assets that are potentially exempt pursuant to § 522(b)(1) and New York State Debtor & Creditor Law.[6] The Court finds as a matter of fact that the Debtor's schedule of exempt property lists: miscellaneous household goods valued at $500.00, wearing apparel valued at $250.00 and a security deposit valued at $850.00. The schedule of exempt property makes no direct reference to cash on hand, the cash surrender value of any insurance policies or an automobile. Additionally the schedule of exempt property states: "In addition to the property listed above, the debtor hereby claims as exempt all other property of the debtor including the debtor's right to any tax refund and any other items of property inadvertently omitted from these schedules by the debtor, pursuant to the Debtor and Creditor Law Article 10–A."

The Bank's fourth allegation is that the Debtor knowingly and fraudulently concealed his interest in Indian Fantasy. The Schedules state that the Debtor had no interest or stock in any company. However the Debtor admitted under oath during a Rule 2004 examination on February 12, 1986, that he is the sole stockholder of Indian Fantasy.

It is this Court's finding of fact that the foregoing allegations of the Bank are supported by the evidence.

The Debtor denies only the materiality of those statements and also contends that since the Bank had forced Indian Fantasy into Chapter 7 Bankruptcy it was well aware of the Debtor's interest in Indian Fantasy and was also aware that any assets owned by Indian Fantasy had passed to the trustee in bankruptcy.

Fifth, the Bank claims that the Debtor knowingly and fraudulently concealed his history of employment and involvement in certain businesses as set forth in his statement of affairs dated October 1985. In answer to question 2(c) of the Statement of Affairs he states that the only business in which he had been engaged in during the six years preceding the filing of the petition is Indian Fantasy. However, during a § 341 meeting on January 15, 1986, he stated under oath that he had been the President of American Girls since its inception in April of 1984, and that he drew a salary when money was available.

It is this Court's finding of fact that the foregoing allegations of the Bank are supported by the evidence.

Additionally, the Bank claims that the Statement of Affairs states that as of October 1985, the Debtor was unemployed, while at the § 341 meeting on January 15, 1986 the Debtor admitted that in 1985 he had been employed as a salesman on a commission basis for various clothing importers and had earned approximately $12,-000 selling garments on commission.

**6.** New York took advantage of the "opt-out" provision in § 522(b)(1) and enacted legislation prohibiting its citizens from electing the federal exemptions contained in § 522(d) of the Bankruptcy Code. *See* N.Y.DEBT. & CRED.LAW § 282 (McKinney 1990).

Pursuant to New York law, property exempt from the estate in bankruptcy includes, *inter* *alia:* a limited amount of cash, one automobile not exceeding twenty-four hundred dollars in value above liens and encumbrances of the debtor, and the cash surrender value of a life insurance policy effected by any person in favor of a third person beneficiary. *See* N.Y.DEBT. & CRED.LAW §§ 283(2), 282(1) (McKinney 1990); N.Y.INS.LAW § 3212(b) (McKinney 1985).

The Debtor's defence to these allegations is that the Bank has failed to show that the Debtor was receiving any income from any of these associations and therefore this claim should not be considered by the Court with regard to the Debtor's discharge in bankruptcy.

The Court notes that the Statement of Affairs is dated October 1985, some four months after the order for relief was signed. Bankruptcy Rule 1007(c) states that the Statement of Affairs is to be filed within 15 days of the entry of an order for relief, hence the Statement of Affairs is usually deemed to reflect the Debtor's condition as of that date of the entry of the order for relief as opposed to the date of the filing or execution of the schedules. However it is clear that as of October, 1985 the date the Statement of Affairs was executed, the Debtor stated that he was unemployed. By reason of the Court's recognition of the Debtor's financial and employment condition as of October 1985, it hardly seems likely that he could have earned $12,000 in commissions during the balance of the year 1985. Thus if he earned $12,-000 as he admitted at the § 341 meeting in January 15, 1986, he obviously was employed prior to October 1985. Still this Court makes no finding that the foregoing allegations of the Bank as to the Debtor's unemployment are supported by the evidence.

■ Although not specifically alleged among the objections to the discharge as set forth in the complaint the Bank seeks to use certain transactions as a basis for denying the Debtor its discharge. Specifically, in its brief in support of its motion for summary judgment, the Bank claims the Debtor knowingly and fraudulently concealed his control over $100,000. The Bank argues that the Debtor never responded to its Requests for Admission, therefore, all the matters contained therein are deemed admitted pursuant to Bankruptcy Rule 7036.[7] It thus claims that the Debtor is deemed to have admitted that at the time of filing the bankruptcy petition in this case: (a) he had an interest, financial or otherwise, in American Girls; (b) he had an interest, financial or otherwise in an entity known as Overseas Adventure Clothing Club [8]; and, (c) that in April or May 1984, he transferred $100,000 from the bank account of Overseas Adventure Club to his own bank account, then transferred $100,000 from his own bank account to the bank account of American Girls. The Bank contends that such funds constituted the start-up capital of American Girls. Further, the Bank claims that the Debtor failed to disclose his control over the money and the transfer of the funds even though these transactions were consummated weeks before the filing of the petition in bankruptcy. The Debtor argues that the Court should disregard as immaterial the foregoing facts including the Debtor's failure to disclose ownership or control over the $100,000, because the Bank did not raise these facts in the complaint.

These allegations are not contained in the Bank's complaint nor did the Bank move to amend its complaint to include them as a basis for denying the Debtor its discharge. It should also be noted that the

---

7. Bankruptcy Rule 7036, which mirrors Federal Rule of Civil Procedure 36, states in pertinent part:

(a) Request for Admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request.

\* \* \* \* \* \*

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of and complaint upon that defendant.

8. The entity known as Overseas Adventure Clothing Club was founded by an acquaintance of the Debtor who also kept the books and records for Indian Fantasy. This entity was a label for clothing sold by Indian Fantasy.

Bank learned of these facts as a result of its own investigations subsequent to the time to file objections to discharge. The Court finds that the aforesaid allegations regarding said transactions are not contained in the complaint and are not pleaded as a basis for denying the Debtor's discharge.

## DISCUSSION

The Bank has several grounds to support its contention that the Debtor should be denied a discharge due to violations of § 727(a)(4) of the Bankruptcy Code which states in pertinent part:

(a) The court shall grant the debtor a discharge, unless— ...

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account

The burden of proof rests with the creditor objecting to the discharge to establish the following elements in order to deny a debtor its discharge pursuant to § 727(a)(4)(A): (1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *See In re Arcuri,* 116 B.R. 873, 880 (Bankr.S.D.N.Y.1990); *Matter of Brooks,* 58 B.R. 462, 465 (Bankr.W.D.Pa. 1986); *In re Shebel,* 54 B.R. 199, 202 (Bankr.D.Vt.1985). "A false oath must relate to a matter and may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." *In re Bailey,* 53 B.R. 732, 735 (Bankr.W.D.Ky.1985).

Section 727 is strictly construed against the objectant and liberally in favor of the Debtor. *In re Adlman,* 541 F.2d 999, 1003 (2d Cir.1976); *In re Shapiro,* 59 B.R. 844, 847 (Bankr.E.D.N.Y.1986). This is in order to protect the debtor's fresh start. However, the policy in favor of providing the honest debtor with a fresh start must be weighed against the countervailing policy of ensuring that dependable information is available to those interested in the adminis-

tration of the bankruptcy estate. *See In re Diodati,* 9 B.R. 804, 807–08 (Bankr.D.Mass. 1981); *In re Shapiro,* 59 B.R. at 849. "In order to obtain a discharge, a debtor must reveal and not conceal his or her financial condition because complete disclosure is the touchstone in a bankruptcy case." *In re Bernard,* 99 B.R. 563, 570 (Bankr.S.D.N.Y.1989).

### a. *The Debtor Made False Statements Under Oath*

■ After examining the pleadings, affidavits and supporting papers this court finds that the Debtor made several false oaths, in the form of false statements and omissions in his Schedules and Statement of Affairs, in connection with this bankruptcy case.

The Debtor swore that the information contained in his Schedules and Statement of Affairs was true to the best of his knowledge and belief. The Debtor admits that statements made in the Schedules regarding the ownership of his car, stock in Indian Fantasy, and the value of his insurance policies are false. Moreover the Debtor's Schedules state that at the time the involuntary petition for relief was filed, he had no cash on hand, yet at the § 341 meeting, he acknowledged that he had maybe a few hundred dollars in his bank accounts.

Additionally the Debtor's Statement of Affairs contains false information. It indicates that the only business in which he was engaged in the six years preceding the filing of the petition was Indian Fantasy. This is false in that the Debtor admits that he had been the president of American Girls since its inception in 1984.

The Debtor's false statements regarding his car, cash on hand and, the cash surrender value of his insurance policies are not cured by the fact that such property may be partially or wholly exempt in as much as none of this property is listed in his schedule of exempt property. Section 522(l) of the Bankruptcy Code specifically directs a debtor to file a list of property that the debtor claims as exempt. The Debtor's statement in his Schedules that he is claim-

ing as exempt all exempt property inadvertently omitted from these schedules is ineffective and completely inadequate as a substitute for actually listing the property he claims as exempt. Allowing such a practice would place an onerous burden on the bankruptcy trustee and creditors to investigate into every asset of a debtor to determine if it qualifies as exempt property, a task which is the debtor's responsibility.

### b. The False Oaths Made By The Debtor Are Material

■ The Debtor in this case argues *inter alia* that he should not be denied a discharge because the various false oaths concern immaterial matters. It is the Debtor's contention that his discharge should not be denied because he failed to reveal his interest in Indian Fantasy, the amount of money in his checking accounts at the time the Bank filed its involuntary petition, or the value of his insurance policies because these omissions are inconsequential and *de minimis*. Similarly, it is argued that the Debtor's failure to reveal his participation in certain businesses is likewise immaterial because the Bank failed to prove that the Debtor earned any money from these ventures. The Debtor maintains his failure to reveal the ownership of a car should not be grounds for the denial of discharge because any interest in the car would be exempt, therefore statements regarding the ownership of this asset are irrelevant.

■ Section 727(a)(4)(A) requires that a debtor must have made a false statement of a material matter, that is a matter material to the condition of the estate. *See In re Steiker*, 380 F.2d 765, 768 (3rd Cir.1967); *In re Vogel*, 16 B.R. 546, 550 (Bankr.S.D. Fla.1981). "The subject matter of a false oath is 'material' and thus sufficient to bar discharge in bankruptcy, if it bears a relationship to the debtor's business transactions or estate, or concerns discovery of assets, business dealings or existence or disposition of his property." *In re Montgomery*, 86 B.R. 948, 956 (Bankr.N.D.Ind. 1988); *See In re Mascolo*, 505 F.2d 274, 277

(1st Cir.1974); *In re Kessler*, 51 B.R. 895, 899 (Bankr.D.Kan.1985). "Thus a debtor may not be able to escape denial of discharge for making false oath merely by asserting that the admittedly or falsely stated information concerned a worthless business relationship or holding". *In re Montgomery*, 86 B.R. at 956. *See In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984); *In re Arcuri*, 116 B.R. at 881. *But See In re Usoskin*, 56 B.R. 805, 814 (Bankr.E.D.N. Y.1985) (pro se debtor's omission of three savings accounts totalling less than $7.00 was not bar to discharge since failure to schedule property of such inconsequential value is not bar to discharge); *Matter of Yackley*, 37 B.R. 253, 256 (Bankr.W.D.Mo. 1983) (not regarded as duty of debtor to schedule worthless assets). The fact that the Debtor has failed to disclose its interest in property that turns out to have little or no value to the estate may be the basis for denying the debtor its discharge because "the determination of relevance and importance of the question is not for the Debtor to make. It is the Debtor's role simply to consider the question carefully and answer it completely and accurately." *In re Diodati*, 9 B.R. at 808. *See Morris Plan Industrial Bank v. Finn*, 149 F.2d 591, 592 (2d Cir.1945); *In re Merritt*, 28 F.2d 679 (9th Cir.1928) (discharge denied for failure to reveal interest in automobile notwithstanding Debtor's contention that counsel advised him that there was no equity); *In re Condura*, 5 B.C.D. 578, 579–80 (S.D.N. Y.1979). The materiality of the false oath does not require that the creditors were prejudiced by the false statement. *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974); *In re Slocum*, 22 F.2d 282, 285 (2d Cir.1927); *In re Bailey*, 53 B.R. at 735; *In re Diodati*, 9 B.R. at 808 (that stock is worthless is not excuse for failure to list in schedules); *In re Mazzola*, 4 B.R. 179, 183 (Bankr.D.Mass.1980) ("fact that stock may have been worthless ... is no excuse for not listing it").

It is this Court's decision that even if each falsehood or omission considered separately may be too immaterial to warrant a denial of discharge pursuant to § 727(a)(4)(A) certainly the multitude of

discrepancies, falsehoods and omissions taken collectively are of sufficient materiality to bar the Debtor's discharge. Assuming the undisclosed property was of little value or exempt and the Bank failed to prove that the Debtor's concealment of his business associations wrongfully deprived the estate of assets, this court would nonetheless conclude that the Debtor's false oaths are material because they relate to the Debtor's assets and business dealings, and taken as a whole are misleading to both the court and the creditors as to the nature and extent of the Debtor's business transactions and estate.

### c. The Statements Were Made Knowingly And With The Requisite Fraudulent Intent

The plaintiff has the burden of establishing that the debtor made a false oath both knowingly and fraudulently. "While the burden of persuasion rests at all times on the creditor objecting to the discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case." *In re Reed*, 700 F.2d 986, 992–93 (5th Cir.1983). Therefore even though the plaintiff has the burden of proving his objection to discharge, the burden of going forward may shift after the plaintiff establishes a prima facie case, *Matter of Brooks*, 58 B.R. at 464, and a debtor's failure to offer a satisfactory explanation when called on by the court to do so is a sufficient ground for denial of discharge. *See In re Devers*, 759 F.2d 751, 758 (9th Cir.1985).

The objecting creditor must prove actual fraud not just constructive fraud. *In re Adlman*, 541 F.2d at 1003. Nonetheless, actual intent may be inferred from the debtor's actions, *In re Bailey*, 53 B.R. at 735, and may be proven by circumstantial evidence since a debtor is unlikely to testify that his intent was fraudulent. *In re Devers*, 759 F.2d at 754; *In re Braun*, 98 B.R. 382, 385 (Bankr.N.D.Ill.1989). It is also widely recognized that reckless indifference to the truth is the equivalent of fraud. *In re Diorio*, 407 F.2d 1330, 1331

(2d Cir.1969). "The courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." *In re Bailey*, 53 B.R. at 735.

The Bank has made its prima facie case by proving all the elements necessary to establish a violation of § 727(a)(4)(A). It has proven that the Debtor made false oaths by making numerous false statements in his Schedules and Statement of Affairs and this court finds as a matter of law that the false statements were made as to matters which are material to this bankruptcy case. Furthermore, even if it could be argued that the Bank has not shown the Debtor acted knowingly and fraudulently, the Bank has proven that the Debtor acted with the requisite intent by establishing through circumstantial evidence that he made these statements with reckless disregard for the truth as evidenced by the shear number of omissions, discrepancies and falsehoods found in the Debtor's Schedules and Statement of Affairs. The many false statements present in the Schedules, and the fact that the Debtor's description of his estate and business transactions given in the Schedules is in many ways incongruous with testimony given in the § 341 meeting and Rule 2004 examinations, even if considered in a light most favorable to the Debtor, show a reckless disregard for the truth.

The Debtor has failed to meet his burden of going forward by failing to offer a satisfactory explanation for the existence of the false statements contained in his Schedules and Statement of Affairs. Instead of explaining how and why these false statements were made, the Debtor raises two arguments: that the various false statements are immaterial and, the Debtor lacked fraudulent intent.

It should be noted that this is not a case where a pro se debtor, unaware of the *modus operandi* of a bankruptcy case made inadvertent or understandable errors. This court agrees with the proposition that an honest debtor should not be

denied a discharge on the basis of harmless errors resulting from inadvertence on the part of a debtor who prepared his own schedules without any legal assistance. *In re Kirst,* 37 B.R. 275, 278 (Bankr.E.D.Wisc. 1983). However, this Debtor was represented by counsel and had time to carefully complete the Schedules and Statement of Affairs with the assistance of counsel as evidenced by the fact that the § 341 meeting was adjourned to give the Debtor time to file the same. Thus the Debtor's failure to offer a satisfactory explanation for the existence of the many false statements in his schedules after the Bank had established a prima facie case is grounds for denial of discharge.

The Debtor contends that an inference of fraudulent intent should not be drawn from the false oaths because he eventually disclosed the truth. For example, the Debtor admitted during the course of the § 341 meetings that he had an interest in Indian Fantasy and that he may have had funds in his checking accounts at the time the involuntary petition for relief was filed. "Subsequent disclosure by the debtor is not sufficient to overcome the allegations of false oath or account." *In re Braun,* 98 B.R. at 386. As stated in *In re Trauger,* 101 B.R. 378, 382 (Bankr.S.D.Fla.1989):

> The Defendants seek to mitigate the consequences of their acts by explaining that they disclosed the various hidden items after discovery. First, such is not a cure. Second, if this type of conduct were to be condoned and would cure denial of discharge, chaos in the Bankruptcy Courts would result because bankrupts would be encouraged to falsify filings with the concept of a later remedy by disclosure if it subsequently appeared that the false filings would be discovered. Such makes no sense. *Id.*

#### d. The Burden Of Proof

There is a split in authority as to whether these elements must be proven by a preponderance of the evidence or by clear and convincing evidence. *See, e.g., In re Taub,* 98 F.2d 81, 82 (2d Cir.1938) (no denial of discharge absent clear proof of fraudulent intent); *In re Merritt,* 28 F.2d at 680

(objections to discharge need only be proved by a fair preponderance of the evidence); *In re Braun,* 98 B.R. at 385 (trustee must prove by clear and convincing evidence that Debtor's oath was fraudulently and knowingly made); *In re Berman,* 100 B.R. 640, 645 (Bankr.E.D.N.Y.1989) (objector may sustain its burden only upon showing of clear and convincing evidence); *In re Irving,* 27 B.R. 943, 946 (Bankr.E.D.N.Y. 1983) (Complaint objecting to discharge requires strict pleading and proof providing for a preponderance of evidence that the oath was false and knowingly and fraudulently made). *Cf. Grogan v. Garner,* — U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of evidence is standard of proof for § 523(a)'s dischargeability exceptions). In this case it is not necessary to make a decision as to which standard is the appropriate standard to apply, particularly in light of the recent Supreme Court decision in *Grogan v. Garner, supra,* because it is this Court's decision after reviewing the affidavits, pleadings, supporting papers and the relevant case law, that the Bank has satisfied the more arduous burden of proving every element necessary to establish a violation of § 727(a)(4)(A) by clear and convincing evidence.

The aggregate of the Debtor's misstatements and omissions of fact demonstrate a pattern of reckless and cavalier disregard for the truth, with the intent of concealing the requisite financial information from the court and the Bank. *In re Shapiro,* 59 B.R. at 849.

#### e. The Timeliness Of The Additional Objections to Discharge

The Bank seeks to deny the Debtor its discharge on the further grounds that the Debtor did not disclose certain banking transactions in his Statement of Affairs. Thus, the Bank argues that the Debtor's failure to disclose his control over $100,000 which was transferred from the Overseas Adventure account to his personal account and then to American Girls and his subsequent failure to cooperate with discovery requests is evidence that the Debtor know-

ingly made false statements relating to material matters in connection with this case with the intent to defraud creditors. The Bank maintains those transactions demonstrate the Debtor's control and involvement with Overseas Adventure Club and American Girls, none of which was disclosed. Additionally it refers to a deposit to the Debtor's personal checking account which also was not disclosed. The Bank argues that these banking transactions should be considered by the Court, even though not contained in the complaint, because they reflect the fraudulent nature of the Debtor's conduct in matters not specifically the subject of the acts set forth in the complaint and which should be deemed admitted by reason of the Debtor's failure to respond to the request for admissions.

It is probable that the Bank failed to indicate the foregoing bank transfers in its objections to the discharge because it was unaware of these transactions until after the time to object to the discharge had expired. The Bank argues that it's ignorance is attributable to the Debtor's refusal to timely comply with repeated requests for discovery. The records indicate that the Debtor never fully complied with requests for discovery thus requiring the Bank to subpoena several banks in order to obtain records of the Debtor's bank accounts and the accounts of the businesses in which the Debtor had an interest, financial or otherwise.

The Court is aware that these transfers were discovered only after requests for discovery went unheeded, two court orders went without compliance and *subpoenas duces tecum* were served on the Debtor's banks. Had the Bank moved timely for permission to amend its complaint to include the pre-petition transfers as grounds for denying the Debtor its discharge, this court would undoubtedly have permitted the amendment as an exception to the normal Rule 4004 deadline. An amended pleading based on the omission of material facts would have supported the general charges in the Plaintiff's original complaint. Thus, the amendment would have related back to the original complaint. *In re Hussain*, 54 B.R. 755, 757–759 (Bankr.E.

D.N.Y.1985). Plaintiff, however, never moved to amend its complaint. Instead this court is asked to consider the allegations included in its Brief in support of summary judgment and incorporate these facts by reference into the complaint.

Bankruptcy Rules 4004(a) and (b) specify a rigid, sixty-day period for filing or amending objections to discharge pursuant to Bankruptcy Code § 727. Any motion for an extension of time to file or amend a complaint must be made before the sixty-day period expires. Bankruptcy Rule 9006(b)(3) permits a time extension only under conditions prescribed by Rule 4004(a). *In re Klein*, 64 B.R. 372, 373–375 (Bankr.E.D.N.Y.1986). Almost every court has adhered to strict timetables imposed by Bankruptcy Rules 4004(a), (b) and 9006 even when the results are onerous to a frustrated creditor. *E.g.*, *Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987); *In re Klein*, 64 B.R. 372 (Bankr.E.D.N.Y.1986); *In re Strickland*, 50 B.R. 16 (Bankr.M.D. Ala.1985).

There are exceptions to the rigid prohibition against untimely filing or amending § 523 and § 727 objections to discharge. Post-deadline amendments have been permitted when a § 727 objection in the original pleading actually supported a subsequent § 523 objection to discharge, *In re Kelley*, 46 B.R. 63, 66–67 (Bankr.E.D.Va. 1985); and, untimely filing or amendment of objections to discharge has been permitted when an administrative error by the court caused the creditor to rely on the wrong deadline for filing objections. *In re Riso*, 57 B.R. 789, 790–793 (D.N.H.1986). Nevertheless, the exceptions to the Rule 4004(a) and (b) deadline are few and far between. In this regard excusable neglect by plaintiff or plaintiff's misplaced reliance on the court's discretion to extend are not exceptions to the Rule 4004 deadline. *E.g.*, *In re Kirsch*, 65 B.R. 297, 300–301 (Bankr. N.D.Ill.1986); *In re Klein*, 64 B.R. at 375– 376; *In re Barr*, 47 B.R. 334, 335–336 (Bankr.E.D.N.Y.1985). Permitting the Bank to rely on allegations not contained in the complaint or an amended complaint would contradict the strict interpretation

given to Rule 4004(a) and (b) by most courts.

## THE MOTION FOR SUMMARY JUDGMENT

In ruling on a motion for summary judgment the court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). The court must review the pleadings, admissions and affidavits, to determine if there is no genuine dispute as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–2511, 91 L.Ed.2d 202, 247–252 (1986). The court must deny summary judgment where there is a genuine issue as to any material fact, *id.* and grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Hamilton v. Smith*, 773 F.2d 461, 466 (2d Cir.1985). The moving party for summary judgment has the burden of showing the absence of any genuine issue as to all material facts which entitle him to judgment as a matter of law. *Katz v. Goodyear Tire & Rubber Company*, 737 F.2d 238, 244 (2d Cir.1984). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

From the pleadings and supporting affidavits in this proceeding it is this Court's conclusion that there is no genuine issue of material fact.

## CONCLUSIONS

1. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(J).

2. The Debtor violated § 727 of the Bankruptcy Code by knowingly and fraudulently making false oaths that are materially related to this bankruptcy Case.

3. For the reasons set forth above, the Bank's motion for summary judgment is granted, the debtor's cross-motion for summary judgment is denied and the Debtor's discharge is denied.

SETTLE ORDER on notice consistent with this opinion.