In re Michael W. KELLY, Debtor.

Mary S. ZITWER, Chapter 7 Trustee of the Estate of Michael W. Kelly, Plaintiff,

v.

Michael W. KELLY, Defendant.

Bankruptcy No. 90 B 10515 (TLB). Adv. No. 90–6208A.

United States Bankruptcy Court, S.D. New York.

Jan. 8, 1992.

Warshaw Burstein Cohen Schlesinger & Kuh by Michele Kahn, New York City, for trustee.

Marc Stuart Goldberg & Associates, P.C. by Lawrence M. Gottlieb, New York City, for Michael W. Kelly, debtor.

### DECISION ON COMPLAINT OBJECTING TO DISCHARGE

TINA L. BROZMAN, Bankruptcy Judge.

Defendant Michael W. Kelly is an unemployed bond trader who filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Plaintiff Mary S. Zitwer was appointed as his trustee. She now seeks to deny Kelly a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(B) and (a)(4)(A) on the grounds that he fraudulently concealed property of the estate and knowingly and fraudulently made false oaths.

A § 341 meeting of creditors was held on March 26, 1991, continued on May 4th and continued again on July 12th. Kelly admits that he omitted from his schedules and, at the meeting on May 4th, failed to disclose the ownership of two automobiles, a 1980 Mercedes and a 1984 Volvo that was and always had been in his mother's possession. He also had failed to list in his schedules repayments of a $15,000 loan from an acquaintance and a $6,000 loan from his mother, but he did disclose these payments in his testimony at the § 341 meeting.

The attorney with whom Kelly had met and discussed his finances did not attend either the March or May meetings, but sent in his place an associate who was ill-prepared and unfamiliar with all of the details of the case. Kelly testified that he was, as a result, anxious and confused. He explained that his anxiety and confusion were exacerbated by the Trustee's manner, which he found intimidating and overly aggressive toward him as well as toward other debtors. (He had witnessed her removing a ring from the finger of an elderly woman and acting in what he described as a hostile manner.) At the May 7th session, the Trustee asked Kelly several questions aimed at determining whether he owned any automobiles. Plainly, Kelly lied, at least as to the Mercedes. At trial, he admitted that he had lied because he was wholly unprepared for his examination by his counsel, intimidated by the Trustee and fearful that the Trustee would immediately seize the vehicles. However, he contended that he did not prepare his schedules nor arrive at the § 341 meeting intending to perjure himself or defraud his creditors. Indeed, he testified without contradiction that accurate information regarding the ownership of the two vehicles was provided to his former counsel who assisted in the preparation of his bankruptcy schedules.

Kelly had fully expected his counsel to appear, and was nonplussed by being represented by an associate completely unfamiliar with his case. Kelly explained at trial that lying to support his schedules in the face of the Trustee's questions was a momentary indiscretion, not a preconceived scheme. His later actions support this assertion.

So guilty did he feel about having lied under oath that he communicated with another bankruptcy attorney known to a friend of his and had that attorney call the Trustee to inform her of the existence of the two automobiles. He also had that attorney recommend new counsel for him. As a result of Kelly's revelation to the Trustee, the two automobiles were ultimately sold for more than $14,000.

New counsel amended the schedules. Kelly contends that his former counsel did not adequately explain to him the nature of the property and the loan repayments omitted from the schedules. Under former counsel's tutelage, he believed that the Mercedes was too old to be of any significant value, and he considered the Volvo to be his mother's property, not his. This view of the Volvo was sufficiently strong that, after Kelly revealed its existence, he actually litigated the ownership issue. Thus, while Kelly concedes that he did make false statements, he asserts that he did not intend to fraudulently conceal property of the estate.

■■■ Objections to discharge must be construed strictly against the objectant and liberally in favor of the debtor. *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999 (2d Cir.1976). The party seeking to bar discharge bears the burden of proof in establishing that (1) the debtor made a statement under oath; (2) such statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Arcuri*, 116 B.R. 873, 879–80 (Bankr.S.D.N.Y.1990).

Some courts have required the plaintiff to prove all the essential elements by clear and convincing evidence. *Arcuri* at 879; *In re Bernard*, 99 B.R. 563, 570 (Bankr. S.D.N.Y.1989); *In re Taub*, 98 F.2d 81 (2d Cir.1938); *In re Braun*, 98 B.R. 382 (Bankr.N.D.Ill.1989). Other courts have applied the less stringent preponderance of the evidence standard. *In re Shebel*, 54 B.R. 199 (Bankr.D.Vt.1985); *In re Irving*, 27 B.R. 943 (Bankr.E.D.N.Y.1983). Recently, however, the Supreme Court has suggested in dicta, in a decision holding a preponderance of the evidence standard applicable to the § 523(a) discharge provision, that Congress intended the same standard to apply to § 727(a)(4)(A). *Grogan v. Garner*, — U.S. ——, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991). Consequently, it is now uncertain whether a court may require a plaintiff seeking denial of discharge under § 727(a)(4)(A) to meet the higher burden of the clear and convincing evidence standard. *In re Sapru*, 127 B.R. 306 (Bkrtcy.E.D.N.Y.1991) (not necessary to decide which standard applies after *Grogan* because proof supports violation of § 727(a)(4)(A) by clear and convincing evidence.)

Turning to the facts here, it is undisputed that under oath Kelly denied owning the two automobiles, that these statements were false and that as to the 1980 Mercedes, Kelly knew his denial was false. Nor is Kelly claiming that the omissions were immaterial to the case. Any matter pertinent to the discovery of assets is material. *In re Mascolo*, 505 F.2d 274, 277 (1st Cir.1974). Thus, the focus of the inquiry here is whether he made these statements with fraudulent intent.

■■■ Amendment does not expunge the falsity of an oath. *Arcuri* at 882; *Shebel* at 203. Nonetheless, it is well established that the court may consider the debtor's subsequent voluntary disclosure as evidence of innocent intent. *In re Tabibian*, 289 F.2d 793, 797 (2d Cir.1961); *In re Kilson*, 83 B.R. 198, 203 (Bankr.D.Conn.1988). Fraudulent intent must be shown by actual, not constructive fraud. 4 *L. King, Collier on Bankruptcy*, para. 727.02 at 727–15 (15th ed. 1990); *In re Sawyer*, 130 B.R. 384 (E.D.N.Y.1991). Scienter and fraudulent, wilful intent are essential elements. *In re Irving*, 27 B.R. 943, 945 (Bankr.E.D.N.Y. 1983). Thus, the party objecting to discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions. *In re Seablom*, 45 B.R. 445, 449 (Bankr.D.N.D. 1984). As a debtor will rarely admit actual

intent to defraud creditors, fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct. *In re Glaser*, 49 B.R. 1015, 1019 (Bankr.S.D.N.Y.1985).

Kelly advances three arguments to support his contention that he lacked the requisite intent. First, he notes that he amended the schedules when, after retaining new counsel, he became aware of the need to do so; second, he alleges that the omission of the automobiles from the schedules was an honest mistake and not an effort to conceal property; third, he asserts that his failure to disclose ownership of the automobiles in the schedules and his misstatements at the § 341 meeting reflect understandable fear, confusion and unfamiliarity with the requirements of the court rather than fraudulent intent.

The Trustee suggests that it was the Debtor's effort to *conceal* assets and withhold information from his own counsel that led him to obtain different counsel during the pendency of the proceeding. Yet the telephone call to the Trustee before Kelly had retained substitute counsel seems to support the contrary conclusion: Kelly sought new counsel precisely because he was concerned that his case was not being handled properly and that he was not communicating effectively with his former attorney.

■ The defense of reliance on counsel is not available when it is transparently plain that the advice is improper. *In re Mascolo*, 505 F.2d 274, 277 n. 4 (1st Cir. 1974); *In re Nazarian*, 18 B.R. 143, 147 (Bankr.D.Md.1982). Here, however, Kelly took the necessary steps of retaining new counsel and amending the schedules when he realized his reliance was misplaced. Thus, the omissions from the schedules are excusable.

■ It is more difficult to believe that Kelly did not understand that he was concealing property of the estate when, under oath, he denied owning an automobile. However, as one court has stated, "we can understand how a debtor testifying in an atmosphere charged with hostility would choose to defensively minimize his

disclosure." *In re Brame*, 23 B.R. 196, 200 (Bankr.W.D.Ky.1982). Denial of discharge is reserved for the truly pernicious debtor. Only where there is a preconceived scheme to thwart the rights of creditors and the process of this court, or such a cavalier disregard of duty as to constitute the legal equivalent of those motives, is the discharge withheld. *Id.*

■ Kelly explains that he thought the 10-year-old car was of so little value that it was not material. Determining whether disclosure is material is not for the debtor to decide. Nor is it a defense that the property was worthless, which, of course, here it was not. Successful administration of the bankruptcy laws depends on the debtor's full disclosure. *See In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984); *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330, 1331 (2d Cir.1969).

To support denying Kelly a discharge, the Trustee relies on *Sapru*. But *Sapru* underscores just how different this case is from those where a discharge is typically denied.

*Sapru* involved an involuntary Chapter 7 case filed by a creditor bank that was owed at least $860,000. The debtor failed to comply with discovery orders; he made numerous false statements concerning his business affairs, going so far as to omit from his schedules any interest of stock ownership in a corporation of which he was the sole shareholder; and he made no attempt to explain the false statements and omissions, merely claiming that the false statements were immaterial and that he lacked fraudulent intent. The court concluded that discharge should be denied because even if any one of the false oaths and omissions taken separately would have been too immaterial to justify denying discharge, the "multitude of discrepancies, falsehoods and omissions, taken collectively, were of sufficient 'materiality' to bar discharge." *Id.*, 127 B.R. at 315–316.

■ Kelly is not a debtor whose actions fit this mold. Although his statements at the § 341 meeting were clearly false, his subsequent prompt and voluntary actions

to set the record straight went a long way toward vitiating his impropriety. This was not a case where the Trustee independently discovered the fraud and confronted the debtor who buckled under the weight of discovered truth, forced to acknowledge his guilt. Here, Kelly voluntarily retracted his false oath before it was discovered and without damage to the estate.

At trial, the court has the opportunity to observe the debtor's demeanor and assess his credibility. Although a debtor's education and business experience are factors to consider in determining whether he can appreciate what information must be disclosed, this debtor's misunderstanding of information to be set forth on his schedules is wholly believable. In no way do I condone Kelly's carelessness and his knowing denial of ownership of the automobiles. Nonetheless, I cannot find that he intended nor that the Trustee has proven, even by a preponderance of the evidence, that he made false statements with specific intent to deceive or such reckless indifference as to constitute actual fraud.

The Trustee's complaint to deny a discharge is dismissed. Settle an order for judgment consistent with this opinion.