In re Paul DUBROWSKY, Debtor.

Paul Dubrowsky, Appellant,

v.

Estate of Arnold Perlbinder, Appellee.

Nos. 96 CV 5121(ADS),
97 CV 4918(ADS).

United States District Court,
E.D. New York.

Feb. 8, 2000.

Coblence & Warner, New York City, by Frank J. Monteleone, Kenneth E. Warner, of counsel, for appellant.

Kearney & Kearney LLP, New York City, by Brian J. Kearney, of counsel, for appellee.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Paul Dubrowsky ("Dubrowsky" the "debtor" or the "appellant"), appeals from a final order dated September 20, 1996 based on an August 22, 1996 written decision by United States Bankruptcy Judge Dorothy Eisenberg. In her decision, Judge Eisenberg denied Dubrowsky's request for a discharge in bankruptcy pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A) on the grounds that (a) he transferred property with intent to hinder, delay or defraud his existing and future creditors within one year of filing the bankruptcy petition; and (b) he knowingly, willfully and fraudulently made false oaths in his petition and schedules. Dubrowsky challenges the Bankruptcy Court's decision denying him a discharge on the grounds that the findings of Judge Eisen-

berg were "erroneous," "fundamentally unjust" and "lacking in factual basis."

In addition, Dubrowsky and Kenneth E. Warner, Esq., the debtor's counsel, appeal from the Bankruptcy Court's final order dated July 29, 1997 and entered on July 30, 1997. This order was based on a written decision dated March 5, 1997, *In re Dubrowsky*, 206 B.R. 30 (Bankr.E.D.N.Y. 1997), that sanctioned Dubrowsky in the sum of $5,000 for alleged false filings. In addition, Judge Eisenberg held that Dubrowsky and Warner were jointly and severally liable to the plaintiff for $19,825, representing counsel fees incurred in connection with numerous discovery disputes. Judge Eisenberg also ordered that Dubrowsky and Warner pay the plaintiff an additional sum of $11,659.36 representing costs taxed against the debtor.

Finally, Dubrowsky and Warner appeal the Bankruptcy Court's August 11, 1997 order awarding attorneys' fees against them. That order awarded an additional $9,000 to the plaintiff for attorneys' fees and expenses incurred in prosecuting the sanctions motion in which the plaintiff was previously awarded the sum of $19,825.

## I. BACKGROUND

Dubrowsky and Arnold Perlbinder were business partners throughout the 1980's. The companies, Dubrowsky & Perlbinder, Inc. and P.D. Furs, Inc., were in the business of importing ladies coats. The debtor held a 50% interest in the entities which he purchased from Perlbinder secured by a promissory note in the principal sum of $163,500. The debtor fell behind on the yearly payments due under the note for the years 1989 through 1992. In May, 1989, Dubrowsky & Perlbinder, Inc. and P.D. Furs, Inc. filed Chapter 11 bankruptcy petitions. P.D. Furs, Inc. was successfully reorganized and was renamed P.D. Fashions, Inc. Dubrowsky & Perlbinder, Inc. could not reorganize and is now defunct.

In January, 1994, Arnold Perlbinder died. His widow and executrix commenced a lawsuit against the debtor and P.D. Fashions, Inc. in the Nassau County Surrogate's Court for non-payment under the promissory note. Judgment was awarded against the debtor in the sum of $196,925.31. On August 25, 1994, seven days after the Surrogate Court's decision was rendered, Dubrowsky filed his voluntary petition under Chapter 7 of the Bankruptcy Code. The estate of Arnold Perlbinder (the "plaintiff" or "appellee") eventually filed a complaint in the bankruptcy court seeking to bar Dubrowsky's discharge which resulted in an adversary proceeding and trial on February 2, 1996 through February 5, 1996 before Judge Eisenberg.

As required, Dubrowsky's petition included sworn statements listing his assets. Dubrowsky listed $6,445 in assets, all of which were claimed as exempt. Almost half of these assets were derived from an ownership interest held in the "SDS Stock Fund" in the sum of $3,000. Dubrowsky also claimed $2,000 in household goods and furnishings. The assets listed by Dubrowsky conflicted with the testimony of his wife who stated that she and her husband jointly owned china, crystal and sterling, which were received as wedding gifts. The $2,000 amount also excluded any household furnishings which Dubrowsky claimed belonged exclusively to his wife. However, a sworn Uniform Residential Loan Application from Prudential Home Mortgage, filed approximately eight months prior to the filing of the bankruptcy petition, stated that Dubrowsky and his wife had $250,000 in joint personal property. The same loan application listed joint assets of $1,299,000.01. Dubrowsky alleges that the loan application was "informally completed over the telephone by his wife" and that the greater sum reflects a "guesstimate" made by the debtor's wife for the costs of a "wish list" of home improvements.

Dubrowsky also failed to mention, on either the Statement of Financial Affairs

("SFA") or the Amended Statement of Financial Affairs ("ASFA"), his $59,000 balance in an account with Prudential Bank held jointly with his wife. On October 4, 1994, at the Section 341 hearing, Dubrowski denied writing checks on this account. However, the evidence at the hearing indicated that Dubrowsky had written a check in the sum of $17,500 on this account four months prior to filing for bankruptcy. Dubrowsky's explanation for failing to list the Prudential account was that his bankruptcy attorney who assisted in the preparation of the petition advised him to omit the account.

Dubrowsky also failed to mention his $60,000 interest in two partnerships, SDS Partners I and SDS Partners II, on either the SFA or the ASFA. At the Section 341 hearing, Dubrowsky stated that he had not transferred property worth more than $1,000 to anyone in the prior two years. At trial, the Bankruptcy Court found that the debtor had transferred his $60,000 interest in SDS Partners I to his wife within fifteen months of filing the bankruptcy petition.

Dubrowsky testified that he did not view his $60,000 interest in the partnership as his because his father-in-law had allegedly placed the funds into the account and because his father-in-law controlled the partnership. However, Dubrowsky conceded that he paid the taxes on his interest in the SDS Partnership and that he had a "legal" interest in the SDS I Partnership which he gifted to his wife for no consideration. When Dubrowsky's former bankruptcy counsel was questioned as to whether he was aware of the $60,000 interest, he testified he that had not been advised of this account.

In addition, Dubrowsky listed a monthly mortgage payment as an expense in his schedules, but did not list his residence, with a value of $350,000, on either the SFA or the ASFA. Dubrowsky admitted that the mortgage was being paid solely from his income but that title in the home was in his wife's name. The residence was held jointly by Dubrowsky and his wife until 1989 at which time Dubrowsky executed a document in connection with the Chapter 11 reorganization of his business in which under the plan he personally guaranteed the shortfall in payments to creditors. In 1992, the residence was deeded back into Dubrowsky's name jointly with his wife so that Prudential Home Mortgage could refinance the mortgage. Three weeks after obtaining the financing, the residence was deeded back to Dubrowsky's wife. At the time the residence was deeded back to Dubrowsky's wife in 1992, the debtor was four payments in arrears on the promissory note owed to Arnold Perlbinder.

In his SFA, Dubrowsky reported that a total of $600 was paid to creditors in the ninety days preceding the filing. However, creditors had in fact received $52,000 during the preference period. After he was confronted with the absence of credit card debt on his SFA, Dubrowsky filed an ASFA. The ASFA corrected some discrepancies but still under-reported the payments by approximately $15,400. Dubrowsky attributed any omissions to "law office failure."

Within ninety days of filing his bankruptcy petition, Dubrowsky transferred (i) $31,612.71 in proceeds from the sale of the debtor's IRA; (ii) approximately $13,500 in proceeds from his paychecks; and (iii) $5,300, to a checking account held exclusively in his wife's name. Dubrowsky later failed to list this checking account on the SFA or ASFA. At trial, Dubrowsky conceded that the transfers were made to avoid any attempts by the plaintiff to attach his assets during the Surrogate's Court proceedings. Dubrowsky claimed that he was advised by his former bankruptcy counsel that he was only obligated to list his accounts or joint accounts. This statement was not corroborated by his former attorney's testimony.

P.D. Fashions, Inc. was not listed as a creditor on the SFA although $5,280 was

owed to that company by Dubrowsky as of the petition date. This amount represented the difference between a $22,780 check Dubrowsky received from P.D. Fashions, Inc. and his repayment of $17,500. The latter amount was paid by Dubrowsky by check from the equity line with Prudential which, as previously stated, Dubrowsky failed to mention on his SFA. Dubrowsky also failed to list the ownership of a Rolex watch in his SFA. After his Section 341 hearing, Dubrowsky amended his SFA to include the missing Rolex which he valued at $1,000.

Finally, Schedule I of Dubrowsky's SFA required him to "describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of [this petition]". The bankruptcy petition was sworn to by the debtor on September 16, 1994. Two days earlier, Dubrowsky signed an employment contract with a company called Outertown Apparel ("Outertown"). His employment at Outertown effectively doubled his pre-petition salary.

Dubrowsky listed $1,965,565.31 in liabilities, of which $1,526,925.31 was owed to plaintiff. The debtor also owed Burlington Coat Factory ("Burlington") $263,640 and Prudential Mortgage Company ("Prudential") $175,000, although neither creditor had demanded payment at the time of the bankruptcy filing. Dubrowsky was current with all other payments as of the bankruptcy petition date. Neither Burlington nor Prudential demanded payment from Dubrowsky, leaving the plaintiff/appellee as the only creditor of any consequence as of the petition date.

On December 2, 1994 the plaintiff/appellee filed a complaint seeking to bar Dubrowsky's discharge in bankruptcy. The complaint contained allegations that Dubrowsky made false oaths in his bankruptcy petition with respect to (1) his failure to reveal his interest in a checking account with Prudential Home Mortgage; (2) his failure to schedule the existence of all of his assets; and (3) his concealment of numerous pre-petition payments to creditors which should have been listed on the debtor's SFA.

## A. The August 22, 1996 Decision and the September 20, 1996 Order

On August 22, 1996, Judge Eisenberg issued a written decision denying Dubrowsky's application for a discharge pursuant to sections 727(a)(4)(A) and 727(a)(2)(A) of the Bankruptcy Code. Judge Eisenberg based the denial of a discharge on several omissions and false statements that were revealed in Dubrowsky's bankruptcy petition and other filings with the Bankruptcy Court. Judge Eisenberg noted that Dubrowsky: (1) failed to list an account with Prudential Bank which had a balance of $59,000; (2) failed to list separate bank accounts in his wife's name which he used to pay his debts; (3) failed to list his interest in two partnerships; (4) failed to list his interest in household goods and furnishings including china, crystal, sterling and a Rolex watch; (5) failed to list payments made to creditors prior to filing his bankruptcy petition; (6) failed to note that two days prior to signing the bankruptcy petition, he had signed an employment contract which effectively doubled his pre-petition salary; (7) testified falsely that he made no transfers of property within two years of filing the bankruptcy petition, when in fact he transferred a $50,000 partnership to his wife in the three months prior to the bankruptcy filing; and (8) concealed an interest in his $350,000 home.

Based upon these findings, the Bankruptcy Court held that the plaintiff had established a *prima facie* case under sections 727(a)(4)(a), 727(a)(2)(a) and 727(a)(5) of the Bankruptcy Code, which Dubrowsky failed to properly rebut. The Court's conclusion was grounded on "the series of false statements on the petition...." Judge Eisenberg found that "the number of omissions, misleading and false statements in the petition, schedules and statement of financial affairs is substan-

tial. . . . This is in addition to the facts as stated herein that the Debtor acknowledged that he sought to place his assets out of the reach of the Plaintiff when she had been involved in a proceeding in the state court involving the Debtor." Based upon these factors, the Bankruptcy Court concluded that:

> the Defendant submitted false oaths at least in reckless indifference to the truth. Such reckless indifference was not mitigated sufficiently by the Defendant's testimony at trial, wherein he attempted to explain the many omissions in part by stating that his wife, his father-in-law, or his bankruptcy counsel were responsible for his statements. The Defendant appears to be a sophisticated businessman, who appeared to be taking part in an elaborate and intentional attempt to hide assets from his creditors.

>   \*   \*   \*   \*   \*   \*

> The only inference this Court can draw from the Defendant's conduct, pre and post-petition, is that the false statements amount to, at a minimum, reckless indifference to the truth.

>   \*   \*   \*   \*   \*   \*

> Based on the overwhelming evidence presented by the Plaintiff, and the Defendant's failure to adequately explain the omission and false statements in the petition, schedules and statement of financial affairs, the Court denies the Defendant a discharge pursuant to Section 727(a)(4)(a) and 727(a)(2)(A) of the Bankruptcy Code.

The Bankruptcy Court's written decision was confirmed in an Order dated September 20, 1996. This appeal followed.

### B. *The March 5, 1997 Decision and the July 29, 1997 Order*

After prevailing on its complaint seeking denial of Dubrowsky's discharge, the Estate of Arnold Perlbinder sought sanctions against Dubrowsky and his litigation counsel, Kenneth Warner, pursuant to Bankruptcy Rule 9011, 28 U.S.C. § 1927 and 11 U.S.C. § 105(a). The plaintiff also moved to tax costs of the trial against Dubrowsky pursuant to 28 U.S.C. § 1920.

In a written decision, *In re Dubrowsky*, 206 B.R. 30 (Bankr.E.D.N.Y.1997), Judge Eisenberg granted the plaintiff's motion for sanctions against Dubrowsky under Rule 9011 for filing a bankruptcy petition containing false statements and directed sanctions, in this regard, in the sum of $5,000. In addition, Judge Eisenberg sanctioned Dubrowsky and Warner jointly and severally in the sum of $19,825, representing the legal fees incurred in connection with certain discovery disputes in the adversary proceeding. Finally, Judge Eisenberg granted the plaintiff's request to tax costs in the sum of $11,659.36.

According to Judge Eisenberg's decision, on February 9, 1995, discovery commenced in the adversary proceeding when the plaintiff served the first request for documents. The plaintiff requested various financial documents including credit card accounts, bank statements, canceled checks, tax returns and documents evidencing ownership of Dubrowsky's personal effects and interest in the SDS stock fund. Dubrowsky's response to this request, which was signed by Warner, made general relevancy objections. Judge Eisenberg held that "it is clear that even a cursory review of the [document request] should have revealed to the Defendant and Warner that the bulk of the documents requested were relevant and essential to the prosecution of the discharge action." *Id.* at 33.

Notwithstanding the relevancy objection, Dubrowsky did consent to the production of certain documents. However, Dubrowsky failed to timely produce all of the documents, which lead to a conference before Judge Eisenberg. On April 6, 1995, Judge Eisenberg orally directed Dubrowsky to produce all the documents requested by April 7, 1995. Despite this directive, as of April 13, 1995, Dubrowsky had not produced all of the requested documents.

On May 9, 1995, the plaintiff filed a motion to compel the production of documents and to request sanctions. On May 18, 1995 a hearing was held resulting in the entry of an order dated July 5, 1995 (the "July Order"). The July Order directed Dubrowsky to produce various documents including tax returns, information regarding SDS Partners, cancelled checks and credit card statements. Dubrowsky failed to comply with the July Order.

In addition, on June 13, 1995, the plaintiff served subpoenas on Karen Dubrowsky, Bear Stearns, and Harry Wendroff, an accountant for P.D. Fashions, to obtain information that Dubrowsky was unwilling to produce. Although Warner did not represent Bear Stearns or Wendroff, he filed an Order to Show Cause seeking to quash the subpoenas on procedural and substantive grounds. On July 11, 1995, Judge Eisenberg denied the motion to quash and "made it quite clear that the Defendant's counsel had no legal standing to object to the subpoena served upon Bear Stearns." *Id.* at 34. The Court added that the documents requested of Dubrowsky's wife, who was also represented by Warner, were to be produced within ten days. Despite the court's direction, Dubrowsky's wife failed to produce the items.

On September 11, 1995 a hearing was held that revealed that Dubrowsky's income from Outer Town Apparel had been deposited in his wife's account. Dubrowsky's wife failed to produce the documents as to this occurrence. In addition, it was revealed that Warner had redacted certain portions of a loan application from Prudential which evidenced Dubrowsky's net worth. Also, it was revealed at the hearing that Dubrowsky and his wife failed to produce 99 checks from the Prudential account.

Pursuant to Bankruptcy Rule 9011, with regard to Dubrowsky, Judge Eisenberg imposed a sanction in the sum of $5,000 for the omissions in the bankruptcy petition and schedules which have previously been discussed. In addition, pursuant to Bankruptcy Rule 9011, Judge Eisenberg sanctioned Dubrowsky for the unreasonable delays associated with the discovery requests. Judge Eisenberg held that "[t]he documents which were withheld and subsequently turned over turned out to be some of the most dispositive regarding the Debtor's culpability. The only purpose for failing to comply with discovery appears to have been to delay and obfuscate the proceedings." *Id.* at 38. As such, Judge Eisenberg awarded the plaintiff the sum of $19,825, representing the legal fees incurred in connection with the discovery disputes.

With regard to Warner, Judge Eisenberg held that his actions "were sufficiently egregious to warrant sanctions under 28 U.S.C. § 1927." *Id.* at 39. The court's decision was based on Warner: (1) disregarding Judge Eisenberg's discovery directives; (2) attempting to quash a subpoena served on a third party he did not represent; and (3) withholding important and relevant documents requested by the plaintiff. The sanctions were limited to joint responsibility with Dubrowsky for the legal fees incurred by the plaintiff in connection with the multiple discovery requests; the necessity for appearances in court because of discovery disputes; and the time spent opposing Dubrowsky's motion to quash. As previously stated, the legal fees associated with these proceedings amounted to $19,825.

Finally, pursuant to 28 U.S.C. § 1920, Judge Eisenberg awarded costs in the sum of $11,659.36. This amount reflected various fees to the clerk and marshall, docket fees, copying fees, witness fees and transcript fees.

By order dated July 29, 1997, Judge Eisenberg confirmed the court's written decision. This appeal followed.

C. *The July 31, 1997 Hearing and the August 11, 1997 Order*

While Judge Eisenberg's March 5, 1997 order awarded $19,825 to the plaintiff in

attorney's fees in connection with the multiple discovery requests, necessity for appearance in court because of discovery disputes, and the time spent opposing Dubrowsky's motion to quash; the legal fees in connection with the sanctions application and the resulting fee application were not considered. As a result, on July 31, 1997 a hearing was held to determine what amount, if any, the plaintiff was entitled for attorneys' fees as the successful party in the sanctions motion as well as the fee application which resulted in the award of $19,825.

After hearing oral argument and analyzing the plaintiff's request for attorneys' fees, Judge Eisenberg concluded that $9,000 was an appropriate fee for successfully arguing the sanctions motion and preparing the resulting fee application. In an order dated August 11, 1997, the Court confirmed the decision made at the hearing and held that Dubrowsky and Warner were jointly and severally liable to the plaintiff in the additional sum of $9,000. This appeal followed.

## II. DISCUSSION

A. *The August 22, 1996 Decision and the September 20, 1996 Order Denying Dubrowsky a Discharge in Bankruptcy*

■ A district court hearing an appeal from a Bankruptcy Court reviews that Court's findings of fact under the "clearly erroneous" standard, *see* Fed.R.Bankr.P. 8013, while its conclusions of law are reviewed under the *de novo* standard. *See In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir.1999) (holding that "we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo.") (citation omitted); *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir.1998) (same) (citations omitted); *See also In re Porges*, 44 F.3d

159, 162 (2d Cir.1995) (same) (citations omitted).

11 U.S.C. § 727(a)(2)(A) states:
The court shall grant the debtor a discharge, unless—
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed, . . .—
(A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(4)(A) states:
The court shall grant the debtor a discharge,
unless—
the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account.

■ Under Section 727(a)(4)(A), the debtor can be denied a discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact. *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987).

■ Objections to discharge are to be construed strictly against the objector and liberally in favor of the debtor. *In re Sicari*, 187 B.R. 861, 870 (Bankr.S.D.N.Y. 1994) (*citing In re Adlman*, 541 F.2d 999, 1003 (2d Cir.1976)). The burden of proof on an objection to discharge lies with the objectant (Fed.R.Bankr.P.4005) and each element of the objection must be established by a preponderance of the evidence. *Id.* (*citing In re Beaubouef*, 966 F.2d 174 (5th Cir.1992)).

■ Fraudulent intent must be shown by actual, not constructive fraud. *In re Kelly*, 135 B.R. 459, 461 (Bankr.S.D.N.Y. 1992) (*citing* 4 Collier on Bankruptcy, ¶ 727.02, at 727–15 (15th ed.1990); *In re Sawyer*, 130 B.R. 384 (Bankr.E.D.N.Y. 1991)). The party objecting to the discharge must show that the information was omitted for the specific purpose of

perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions. *Id.* (*citing In re Seablom,* 45 B.R. 445, 449 (Bankr.D.N.D.1984)).

■■■ The objecting party may prove her case by a fair preponderance of the evidence. *In re Mascolo,* 505 F.2d 274, 276 (1st Cir.1974). For purposes of this motion, it is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud. *In re Kaiser,* 722 F.2d 1574, 1583 (2d Cir.1983); *In re Diorio,* 407 F.2d 1330, 1331 (2d Cir.1969).

■■■ Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case. *In re Gollomp,* 198 B.R. 433, 440 (S.D.N.Y.1996).

■■■■ A discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor. *In re Sicari,* 187 B.R. at 880. (*citing In re McManus,* 112 B.R. 773, 775 (Bankr.E.D.Va. 1990) and *In re Tabibian,* 289 F.2d 793, 794 (2d Cir.1961)). The purpose of section 727(a)(4)(A) is to insure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of examination or investigation to determine whether the information provided is true. *Oldendorf v. Buckman,* 173 B.R. 99, 104 (E.D.La.1994). Successful administration of the bankruptcy law depends on the debtor's full disclosure. *In re Kelly,* 135 B.R. at 462; *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984); *In re Diorio,* 407 F.2d at 1331.

■■■ To prove an objection to discharge under § 727(a)(4)(A), the creditor must prove:

(1) the debtor made a statement under oath;

(2) the statement was false;

(3) the debtor knew the statement was false;

(4) the debtor made the statement with fraudulent intent; and

(5) the statement related materially to the bankruptcy case.

*In re Beaubouef,* 966 F.2d at 178; *In re Sicari,* 187 B.R. at 880 (*citing Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 251 (4th Cir.1987)).

The false statements and oaths at issue here are:

(a) The concealment of the home equity account at Prudential Bank with the credit balance of approximately $59,000, on which the debtor had check writing capacity;

(b) The concealment of separate bank accounts in Dubrowsky's wife's name in which Dubrowsky's money was used to pay his debts;

(c) The concealment of Dubrowsky's partnership interest in SDS Partners I and II;

(d) The concealment of Dubrowsky's interest in household goods and personal belongings valued in excess of $2,000;

(e) Dubrowsky's concealment of payments to five creditors during the preference period;

(f) Dubrowsky's concealment of his new employment contract, which effectively doubled his salary three weeks after the filing of the petition; and

(g) Dubrowsky's continuous concealment of his beneficial interest in his $350,-000 home, even though he did testify that title in the home was transferred from his and his wife's name as joint tenants to solely his wife's name.

As previously stated, Judge Eisenberg found that the plaintiff-appellee had met its *prima facie* burden of objecting to the discharge, which Dubrowsky failed to adequately rebut. Therefore, Judge Eisenberg denied Dubrowsky a discharge.

■■■ A debtor will rarely admit actual intent to defraud creditors, so that

fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct. *In re Kelly,* 135 B.R. at 459. Deference is given to the original fact finder because of that court's superior position in making determinations of credibility. *In re Gollomp,* 198 B.R. 433, 436 (S.D.N.Y.1996) (*citing In re Tully,* 818 F.2d 106, 109 (1st Cir.1987)). Each of the false statements and oaths will be considered independently.

1. **The concealment of the home equity account at Prudential Bank with the credit balance of approximately $59,000, on which the debtor had check writing capacity:**

Schedule B, Question 2 of the SFA requires the debtor to identify all checking, savings, or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses or cooperatives in which the debtor has an interest. The Prudential account, jointly held by Dubrowsky and his wife, which had a $59,000 balance, was not listed in the debtor's SFA or his ASFA. In response to this question, Dubrowsky listed two checking accounts with a total balance of $110. Dubrowsky did make reference to a transfer to the Prudential account in the sum of $20,500 within the 90 day preference period in his ASFA. The Bankruptcy Court found that the transfer was actually in the sum of $33,527.46.

At trial, Dubrowsky acknowledged that he omitted the Prudential account and conceded that his testimony was false at the Section 341 hearing when he testified that he had not used the account. On appeal, Dubrowsky claims that he failed to list the Prudential account on the advice of his bankruptcy attorney, who allegedly informed him that he did not consider the account to be a "bank account."

■■■■■■■■ An explanation by the debtor that he acted on advice of counsel, who in turn was fully aware of all the relevant facts, generally rebuts an inference of fraud. However, even the advice of counsel is not a defense to a charge of making a false oath or account when it is transparently plain that the property should be scheduled. *In re Mascolo,* 505 F.2d 274 (1st Cir.1974); *In re Kelly,* 135 B.R. 459 (*citing In re Mascolo, supra,* and *In re Nazarian,* 18 B.R. 143, 147 (Bankr.D.Md. 1982)).

■■■■ In the present matter, Dubrowsky, acting on the alleged advice of counsel, chose not to list the Prudential account. However, just four months prior to filing, he had written a check in the sum of $17,500 on this account. It is beyond belief that the debtor had the ability to withdraw the sum of $17,500 and simultaneously be under the impression that the account was not an asset. The evidence clearly indicated that the account had a balance of $59,000. The Court finds that Dubrowsky's reliance upon the alleged advice of counsel, even if true, was not reasonable.

As such, the Court finds that Judge Eisenberg's finding that Dubrowsky's concealment of the Prudential account amounted to a false oath under section 727(a)(4)(A) was supported by substantial evidence and was not clearly erroneous.

2. **The concealment of separate bank accounts in the appellant's wife's name in which the appellant's money was used to pay his debts:**

At trial, Dubrowsky admitted that he transferred at least the following assets to his wife within the ninety days prior to the filing of his petition: (i) $31,612.71 in proceeds from the sale of the debtor's IRA; (ii) approximately $13,500 in proceeds from his paychecks; and (iii) $5,300 in U.S. currency.

These funds, totaling approximately $50,500 were deposited in accounts bearing only Dubrowsky's wife's name. At trial, Dubrowsky conceded that these transfers were made for the express purpose of

574

avoiding the plaintiff's efforts to attach his bank accounts during the hearing in the Surrogate's Court. After the transfers, Dubrowsky claimed that he had only $50.00 in cash on hand and bank deposits of only $110.00 at the time of his bankruptcy petition. None of the above transfers were listed in response to Question 10 of the SFA regarding transfers made within one year of the petition date, and the petition failed to include any reference to his wife's bank accounts.

At trial, Dubrowsky claimed that he was advised by his attorney that he was only obligated to list his accounts or joint accounts. Dubrowsky asserted that he did not list the deposits of his paychecks and the IRA proceeds on the schedules because his attorney did not consider them "transfers" within the meaning of the schedule. However, his attorney did not corroborate this testimony at trial. On appeal, Dubrowsky again claims that he failed to mention the transfers to his wife's accounts on the SFA and ASFA based upon his reliance on the advise of counsel. In addition, Dubrowsky claims that he had liquidated his IRA and had given the funds to his wife to pay household bills.

■ The Court is not persuaded that Dubrowsky transferred the proceeds from his IRA into his wife's account for the sole purpose of "paying the bills." It is clear that any proceeds from a paycheck bearing Dubrowsky's name, are considered his funds, regardless of which account those funds are ultimately transferred. Therefore, Dubrowsky cannot rely upon "the advice of counsel" defense here where it is abundantly clear that the proceeds from his paychecks should have been listed on the bankruptcy schedule.

Similar to the failure to reveal the Prudential account, the Court finds that Judge Eisenberg's decision in this regard as to the concealment of bank accounts was supported by ample evidence and was not clearly erroneous. The Court finds that Judge Eisenberg properly held that Dubrowsky made multiple false oaths by concealing separate bank accounts in his wife's name.

### 3. The concealment of the debtor's partnership interest in SDS Partners I and SDS Partners II:

Question 16 on Page 4 of the debtor's SFA requires a listing of all businesses in which the debtor was a partner within two years of filing. The debtor failed to list his interest in two partnerships, SDS Partners I and SDS Partners II. Dubrowsky did not correct this answer on his AFSA. At the Section 341 hearing, Dubrowsky falsely stated that he had not transferred property worth more than $1,000 to anyone in the prior two years, when in fact, the debtor had transferred a $60,000 interest he had in SDS Partners I to his wife within fifteen months of filing the bankruptcy petition.

On appeal, Dubrowsky argues that: (1) his attorney erroneously listed his interest in the SDS Partnerships in the petition as the "SDS Stock Fund" and the failure to specify his partnership status was due to counsel's oversight and appellant's "innocent ignorance"; (2) his failure to recall his transfer of his partnership interest to his wife at the Section 341 hearing was due to "innocent error"; and (3) because the transfer was made more that one year prior to the bankruptcy filing, the transfer is outside the reach of section 727(a)(2)(A).

■ The record does not reflect that Dubrowsky's attorney was aware of the $60,000 transfer of the partnership interest made to Dubrowsky's wife within two years prior to filing his bankruptcy petition. Therefore, the debtor is precluded from redirecting any errors or omissions to "counsel oversight" when counsel was not aware of all the relevant facts related to the partnership interests.

Despite Dubrowsky's argument that the partnership was controlled by his father-in-law, he: (1) paid tax on the interest in the SDS Partnerships; (2) held a legal interest in the partnerships; and (3) ulti-

mately transferred the majority of the interest to his wife. Given these facts, and the absence of extenuating circumstances, the finding that the statement was fraudulent was appropriate. *See Diorio v. Kreisler–Borg Construction Co.,* 407 F.2d 1330 (2d Cir.1969).

Therefore, failure to disclose his partnership interests in SDS Partners I and II and his failure to disclose the $60,000 transfer of SDS Partners I to his wife, constitutes a false oath within the purview of § 727(a)(4)(A).

4. **The concealment of Dubrowsky's interest in household goods and personal belongings valued in excess of $250,000:**

Dubrowsky's SFA reported $2,000 in household goods and furnishings in response to question 4 on Schedule B and $6,445 in total assets. At trial, when asked by the Court how he arrived at the $6,445 figure, Dubrowsky testified that he viewed his personal property as being limited to his clothing, a fish tank, a bicycle and a one-half interest in a stereo.

As previously stated, approximately eight months prior to the filing of the petition, Dubrowsky and his wife submitted a loan application to Prudential which estimated the value of their household goods and furnishings at $250,000. This application was sworn to by Dubrowsky and his wife on or about November 8, 1993. Dubrowsky explained that the application was informally completed over the telephone by his wife and that the $250,000 estimate was actually a "guesstimate" made by his wife which does not reflect his actual furnishings, but was rather a "wish list" of items she hoped to purchase for the home.

Dubrowsky further argues that the figure reported on the bankruptcy filings was selected by his bankruptcy counsel based upon a room-by-room description of the contents of his house and the age of his furnishings and what the counsel estimated those items would yield in a bankruptcy

auction. Therefore, Dubrowsky contends on appeal that he relied in good faith upon the advice of his bankruptcy attorney.

As stated above, the "reliance upon advice of counsel" is not an impenetrable shield behind which appellant may continually hide. The advice of counsel is not a defense when it is transparently clear that the advice is improper. *In re Kelly,* 135 B.R. at 462. It cannot be disputed that Dubrowsky submitted a sworn financial statement to Prudential in which he estimated his household goods and furnishings to be valued at $250,000. Whether this amount was a "guesstimate" by his wife or not, the discrepancy between the $250,000 estimate sworn to in the financial statement and the $2,000 estimate sworn to in the bankruptcy schedule would make any reasonable person question the accuracy and reliability of the bankruptcy counsel's alleged approximation of the value of his household goods.

At trial, Dubrowsky attempted to reconcile this substantial discrepancy by stating that the number was "picked out of the air" by his wife. This court takes notice of the fact that Judge Eisenberg did not accept this testimony as credible or reasonable. On appeal, deference is given to the original fact-finder because of that court's superior position in making determinations of credibility. *In re Gollomp,* 198 B.R. at 436.

Even if the statements on the financial statement submitted to Prudential were false, which would be tantamount to fraud in that situation, this court cannot ignore the testimony of Mrs. Dubrowsky in which she stated that she and her husband jointly owned china, crystal and sterling, which were received as wedding gifts, and which were omitted on the schedules.

The gross discrepancy of the household goods estimates, coupled with the omission of the jointly owned property evidences, at the minimum, a reckless disregard for the truth which has consistently been treated as the functional equivalent of fraud for

purposes of § 727(a)(4)(A). *In re Tully*, 818 F.2d 106, 112 (1st Cir.1987).

### 5. The debtor's concealment of payments to five creditors during the preference period:

Dubrowsky reported on his SFA that a total of $600 was paid to creditors in the ninety days preceding the filing. When confronted about the absence of specific credit card issuers, it was revealed by Dubrowsky that five creditors had received payments of approximately $52,000. While Dubrowsky corrected some of the discrepancies in his ASFA, the Bankruptcy Court found that the amounts listed still under-reported the payments by approximately $15,400. When pressed at trial about these discrepancies, Dubrowsky claimed that he provided his attorney with the information but it was omitted due to "law office failure."

On appeal, Dubrowsky argues that his "concealment" of the $52,000 in preference payments was refuted at trial and that the evidence does not support a finding that he knowingly and fraudulently concealed any preference payments. Dubrowsky argues that "the preference of some creditors over others may authorize a trustee in bankruptcy to avoid the preference, but, without more, does not establish a wrongful intent to hinder, delay or defraud creditors." (*citing In re Marcus*, 45 B.R. 338, 343 (Bankr.S.D.N.Y.1984)).

■ While it is true that a mere preferential transfer, without more, is not the equivalent of a fraudulent transfer for purposes of an objection to discharge and would not constitute further evidence of actual fraud, *Coder v. Arts*, 213 U.S. 223, 241, 29 S.Ct. 436, 53 L.Ed. 772 (1909) and *Van Iderstine v. National Discount Co.*, 227 U.S. 575, 582–83, 33 S.Ct. 343, 57 L.Ed. 652 (1913), the evidence at trial indicates that Dubrowsky made a preferential transfer and knowingly and fraudulently concealed it from the bankruptcy trustee.

On appeal, Dubrowsky does not address the under-reported payments to creditors listed on his ASFA, but rather posits a "law office error" argument to resolve the discrepancy in the reported amount paid to creditors during the preference period and the amount actually paid.

■ Dubrowsky misstated the amounts paid to his creditors on three different occasions: (1) on his SFA; (2) at the Section 341 hearing; and (3) on his ASFA. Essentially, the exact amount paid to creditors was never noted on his bankruptcy schedules. As the Circuit Court stated in *Tully*, "[a] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he had made under oath." *In re Tully*, 818 F.2d 106, 111 (1st Cir.1987).

Dubrowsky had undergone a Chapter 11 bankruptcy with his two businesses in the recent past and was aware of the most fundamental bankruptcy procedures such as preferential payments to creditors. In fact, Dubrowsky admitted at trial that he had participated in two prior bankruptcies and knew what a preference was.

■ As the Second Circuit has recognized, fraudulent intent may be inferred from a series of incorrect statements contained in the schedules. "Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the Bankrupt. . . . Statements called for in the Schedules . . . must be regarded as serious business; reckless indifference to the truth . . . is the equivalent of fraud." *In re Casado*, 187 B.R. 446, 450 (Bankr. E.D.N.Y.1995) (*citing In re Diorio*, 407 F.2d 1330, 1331 (2d Cir.1969)); *See also In re Kaiser*, 722 F.2d 1574, 1583, n. 4 (2d Cir.1983) (where attempts to justify false statements in the debtor's schedules based on the actions of third parties and debtor's own inadvertence were unavailing).

■ Dubrowsky could have cured the "law office error" allegedly committed by his bankruptcy counsel after the first

grossly under-reported SFA was submitted and after the Section 341 hearing. However, he did not avail himself of these opportunities. Instead, he signed a sworn schedule which he knew contained false information on previous occasions and admitted to the errors only after being cross-examined at trial. Dubrowsky's reckless indifference to the truth in concealing payments to other creditors during the preference period constitutes a false oath under section 727(a)(4)(A). As such, Judge Eisenberg's decision was not clearly erroneous and was supported by substantial evidence.

### 6. The debtor's concealment of his new employment contract, which effectively doubled his salary three weeks following the filing of the petition:

Schedule I of Dubrowsky's SFA required that he "describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document." The Petition was sworn to by Dubrowsky on September 16, 1994. Dubrowsky reported gross income from P.D. Fashions at approximately $105,000 per annum. Two days earlier, Dubrowsky signed an employment contract with Outertown Apparel which effectively doubled his salary to approximately $200,000 per annum.

On appeal, Dubrowsky contends that his bankruptcy attorney advised him that he need not list his post-petition income because he did not consider the question applicable to a Chapter 7 case where the debtor does not have consumer debts. Further, Dubrowsky argues that there is no basis to infer a motive to conceal his post-petition income as it would not become property of Dubrowsky's estate or otherwise become available to creditors.

■■■■ Judge Eisenberg found that Dubrowsky's "defense" was unavailing as his testimony on this issue lacked credibility. The Court agrees. Dubrowsky cannot

choose which questions on the SFA and bankruptcy schedules are relevant and need to be answered. It is the debtor's responsibility to answer *all* of the questions on the SFA and bank schedules honestly, accurately and fully. Dubrowsky's failure to include an increase in his salary was a material omission that amounted to reckless indifference to the truth under section 727(a)(4)(A).

### 7. The debtor's continuous concealment of his beneficial interest in his $350,000 home:

Dubrowsky has lived at 36 East Voss Avenue, East Rockaway, New York since 1981. The property was purchased by the debtor and his wife and held jointly until 1989. The residence was transferred to Mrs. Dubrowsky in 1989. In 1992, the house was deeded back to Dubrowsky jointly with his wife, to induce Prudential Home Mortgage to refinance the mortgage in the sum of $175,000. Three weeks after obtaining the financing, Dubrowsky and his wife deeded the residence back to his wife alone. At that time, Dubrowsky was four payment in arrears on the promissory note owed to Arnold Perlbinder.

■■■ Although Dubrowsky claimed no ownership interest in the house, he scheduled the monthly mortgage payment as his expense in his SFA, Schedule J. He also scheduled the mortgage as a liability on Schedule F. The $350,000 home was not listed as an asset on either his SFA or his ASFA, although Dubrowsky admitted at trial that the mortgage was being paid by his income only. When questioned at the trial about the conflicting explanations for these back and forth transfers, Dubrowsky claimed that the 1989 transfer was made because his interest income decreased by $1,600 per month, and his father-in-law agreed to assist with the upkeep on the residence. As a result, the residence was transferred to his wife's name. The Court takes note that Judge Eisenberg found that this proffered answer "D[id] not ring

true" because a review of the income tax returns by the Bankruptcy Court revealed that the income lost in interest payments was more than replaced by his increased wages.

A review of the record indicates that those findings of fact were not clearly erroneous. Accordingly, the Bankruptcy Court's finding that Dubrowsky made a false oath with respect to his equitable interest in his $350,000 residence is affirmed.

### 8. Summary

Based independently on each of the factors outlined above, as well as the totality of the factors described, the Court finds that the Bankruptcy Court's holding denying Dubrowsky a discharge in bankruptcy was well supported by substantial evidence. Hearing the testimony and viewing the witnesses, Judge Eisenberg was clearly in the best position to make this type of decision and this Court will not interfere with her factual conclusions as they are well supported by the testimony at the trial. As such, the Court affirms the decision of Judge Eisenberg denying Dubrowsky a discharge in bankruptcy.

B. *The March 5, 1997 Decision and July 29, 1997 Order Sanctioning Dubrowsky and Kenneth Warner, Esq. and the July 31, 1997 Hearing and August 11, 1997 Order*

The Second Circuit has observed that "[s]anctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent power. Because the various sources of the court's authority are governed by differing standards, ... it is imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power." *Sakon v. Andreo,* 119 F.3d 109, 113 (2d Cir. 1997) (*quoting* and *citing In re Ames Department Stores, Inc.,* 76 F.3d 66, 70 (2d Cir.1996)); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.,* 73 F.3d 1253,

1262 (2d Cir.1996)). "Thus, although the [ ] award of sanctions is reviewed under an abuse-of-discretion standard, ... such an award either without reference to any statute, rule, decision, or other authority, or with reference only to a source that is inapplicable will rarely be upheld...." *Sakon,* 119 F.3d at 113 (*quoting* and *citing Satcorp International Group v. China National Silk Import & Export Corp.,* 101 F.3d 3, 5 (2d Cir.1996) [vacating on other grounds and noting that the court's failure to cite any authority for its imposition of sanctions "by itself might well be sufficient to warrant a remand"]; *United States v. Merritt Meridian Construction Corp.,* 95 F.3d 153, 171 (2d Cir.1996)); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.,* 73 F.3d at 1260 ("because the specific grounds proffered by the district court do not support the imposition of sanctions, we find the sanctions improper").

Bankruptcy Rule 9011 permits a court to impose sanctions on attorneys or parties who assert frivolous claims and defenses in a bankruptcy proceeding. Rule 9011 parallels Federal Rule of Civil Procedure 11, containing "only such modifications as are appropriate in bankruptcy matters." *Cinema Serv. Corp. v. Edbee Corp.,* 774 F.2d 584, 585 (3d Cir.1985). Accordingly, this Court's review of the application of Rule 9011 sanction by the Bankruptcy Court is governed by Rule 11 jurisprudence.

As in Rule 11 cases, we review the imposition of sanctions pursuant to Bankruptcy Rule 9011 using the abuse of discretion standard. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *Mareno v. Rowe,* 910 F.2d 1043 (2d Cir. 1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). We are mindful, however, that "legal errors on the part of the [lower courts] will constitute an abuse of discretion." *Mareno,* 910 F.2d at 1047.

In order to impose Rule 9011 sanctions, a bankruptcy court must find that an attorney has submitted a claim that has no chance of success under existing precedents and that fails to advance a "reasonable argument to extend, modify or reverse the law as it stands." *Id.* at 1047; *see also Securities Indus. Ass'n v. Clarke,* 898 F.2d 318, 321 (2d Cir.1990). Essentially, the court may sanction on the basis of Rule 9011 if an attorney advances a frivolous argument.

Mindful of the potential severe chilling effect of Rule 9011 sanctions on counsel and the parties, and the concomitant restraint on legal creativity and effective representation, the Second Circuit has counseled that "any and all doubts must be resolved in favor of the signer." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Helpful to the Court's determination is the extensive discussion of the law of sanctions in *Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). In *Oliveri,* the Second Circuit stated:

> Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay. *See Acevedo v. Immigration and Naturalization Service,* 538 F.2d 918, 920 (2d Cir.1976). Although our precedents have not always made this bad-faith requirement clear, *see Cheng,* 713 F.2d at 891 n. 3 (stating that it need not be decided whether an award under § 1927 requires a finding of bad faith or merely "unreasonable conduct"), we hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power, *accord Colucci v.*

> *New York Times Co.,* 533 F.Supp. 1011, 1013–14 (S.D.N.Y.1982) (Weinfeld, J.). Indeed, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is, as noted above, that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.

*Oliveri,* 803 F.2d at 1273.

In most cases, the imposition of sanctions and the determination of the amount of sanctions are matters that are best left to the discretion of the court that is most familiar with the issues and the litigants. *See Savino v. Computer Credit, Inc.,* 164 F.3d 81, 88 (2d Cir.1998). Reviewing the entire record and affording every justifiable benefit in favor of the appellants, the Court finds that the imposition of a sanction against Dubrowsky in the sum of $5,000 for filing a false bankruptcy petition; the sanction against Dubrowsky and Warner in the sum of $19,825 representing counsel fees incurred in connection with the numerous discovery disputes; the $11,659.36 in costs; and the $9,000 awarded for successfully arguing the sanctions motion and preparing the resulting fee application, were neither improper nor excessive given the extensive analysis and findings of Judge Eisenberg in *In Re Dubrowsky,* 206 B.R. 30 (Bankr. E.D.N.Y.1997), that Dubrowsky's petition and other documents were riddled with false and misleading statements.

Moreover, Judge Eisenberg's finding that Warner failed to turn-over various financial documents including credit card accounts, bank statements and cancelled checks despite a Court order directing that he turn over those documents, establishes a sufficient basis for those sanctions. In addition, Warner made numerous arguments before Judge Eisenberg that lacked any legal merit. Clearly,

Warner had no standing to move to quash a subpoena seeking documents from a non-party witness whom he did not represent. Similarly, the relevancy objections made by Warner could only be interpreted as an effort to delay the discovery proceedings and to hide the truth.

Therefore, the Court holds that the imposition of the various sanctions imposed by Judge Eisenberg were fair, proper and reasonable. Accordingly, the Court affirms the March 5, 1997 decision and July 29, 1997 Order as well as the decision in the July 31, 1997 hearing and August 11, 1997 Order.

### III. CONCLUSION

Having reviewed the parties' submissions, it is hereby

**ORDERED,** that the August 22, 1996 decision and the September 20, 1996 Order denying Dubrowsky a discharge in bankruptcy are **AFFIRMED;** and it is further

**ORDERED,** that the March 5, 1997 decision and July 29, 1997 Order imposing a $5,000 sanction on Dubrowsky, a $19,825 sanction on Dubrowsky and Warner jointly and severally, and an award of $11,659.36 in costs is **AFFIRMED;** and it is further

**ORDERED,** that the July 31, 1997 hearing and August 11, 1997 Order awarding an additional $9,000 in attorneys' fees for successfully arguing the sanctions motion and preparing the resulting fee application are **AFFIRMED;** and it is further

**ORDERED,** that Clerk of the Court is directed to close all civil case numbers related to this case including 96 CV 5121 and 97 CV 4918.