In re Francisco Javier LEIJA, Debtor.

Patrick Kavanagh, Trustee of the
Bankruptcy Estate of Frank
Leija Farms, Inc., Plaintiff,

v.

Francisco Javier Leija, Defendant.

Bankruptcy No. 98–62055–B–7.

Adversary No. 99–1297.

United States Bankruptcy Court,
E.D. California,
Fresno Division.

Dec. 3, 2001.

Francisco Javier Leija, Debtor, pro se.

Randell Parker, Arvin, CA, Chapter 7 Trustee.

---

### MEMORANDUM OPINION

W. RICHARD LEE, Bankruptcy Judge.

This adversary proceeding concerns the Debtor's right to a discharge under Bankruptcy Code section 727(a). It was tried before the court without a jury and taken under submission on October 9, 2001. D. Max Gardner, Esq. appeared for and with plaintiff, Patrick Kavanagh, ("Kavanagh") trustee of the bankruptcy estate of Frank Leija Farms, Inc. ("FLF"). The Debtor, Francisco Javier Leija ("Leija") appeared in pro per. This court has jurisdiction over this proceeding pursuant to 11 U.S.C. § 727 and 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). This Memorandum Opinion contains the court's findings of fact and conclusions of law.

The Debtor, Francisco Javier Leija, and his affiliated corporation, Frank Leija Farms, Inc. both filed bankruptcy petitions in December 1998. The issue decided in this adversary proceeding is whether the Debtor, who signed and verified FLF's bankruptcy schedules and statement of fi-

nancial affairs *in blank* knowing that they would be subsequently completed by his attorney and filed in FLF's bankruptcy case, is entitled to his discharge. For the reasons set forth below, the Debtor's discharge is denied pursuant to 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(7).

### Background

Prior to this bankruptcy, Leija was president, sole shareholder and the only director of Frank Leija Farms, Inc., a California Corporation. As such, FLF was an "insider" of Leija within the definition of 11 U.S.C. § 101(31)(A)(iv). FLF first sought bankruptcy protection under chapter 12 in 1988 ("Farms '88").[1] FLF completed its chapter 12 plan and the Farms '88 case was closed in 1994. FLF again filed for bankruptcy protection under chapter 12 in September 1997 ("Farms '97").[2] Leija signed the Farms '97 bankruptcy schedules as President of FLF. That case was subsequently dismissed on the Debtor's motion in August 1998 and was closed in January 1999.

FLF filed a third bankruptcy petition under chapter 12 on December 21, 1998 ("Farms '98").[3] Leija also signed the Farms '98 bankruptcy schedules as President of FLF. On the same day, Leija commenced a personal chapter 7 proceeding in which his discharge is now at issue. Farms '98 was converted to chapter 7 in March 1999. Kavanagh was appointed trustee of the Farms '98 estate and brings this adversary proceeding against Leija in that capacity.

Kavanagh objects to Leija's discharge on several grounds under Bankruptcy Code section 727(a) based on various acts and events alleged in connection with the Farms '98 bankruptcy proceeding. Kav-

---

1. Case # 88–13140

2. Case # 97–17488

3. Case # 98–62057

anagh asserts, *inter alia*, that Leija transferred property of FLF and attempted to conceal those transfers within one year of the Farms '98 bankruptcy case. The schedules of assets filed in both the Farms '97 and the Farms '98 cases list various tractors and harvesting and packing equipment as assets of those estates. The testimony at trial confirmed that Leija had actually disposed of much of the equipment during the Farms '88 case, more than one year prior to commencement of the Farms '97 case. The Farms '97 and Farms '98 schedules therefore contained numerous errors.

In May 1999, at the 341 meeting of creditors for the Farms '98 chapter 7, Mr. Leija testified regarding various pre-petition equipment transfers. However, he was unable to provide dates for and records of those transactions. He testified that the FLF offices and business records had been ransacked. Kavanagh verified that when he first inspected the premises, it appeared that the offices had been ransacked with documents strewn all over the floor. The next time he inspected the premises, after he had demanded that Leija produce the business records of FLF, he found that the business office had been damaged by a fire and the records remained unavailable.

Kavanagh argues that the pre-petition transfer of FLF's assets, the concealment of those transfers, and the failure to maintain records for FLF are grounds to deny Leija's discharge under Bankruptcy Code section 727(a)(7)—non-dischargeable acts committed in connection with the Farms '98 case. Although the evidence at trial was inconclusive as to what actually happened to some of the farm equipment, Mr. Leija's own testimony supported the conclusion that the Farms '98 schedules were grossly inaccurate. Kavanagh also argues that the filing of inaccurate bankruptcy

pleadings in the Farms '98 case constitutes the filing of a "false oath"—an independent ground to deny discharge under section 727(a)(7).

In response to these allegations, Mr. Leija attempted to explain the disposition of the FLF assets and the inaccuracy of the Farms '97 and '98 schedules. Mr. Leija testified that he did not actually read the Farms '97 and '98 bankruptcy schedules before he signed them and they were filed. Leija had given a copy of the Farms '88 schedules to his attorney to use in preparing the Farms '97 schedules, which may explain why the Farms '97 schedules still showed the equipment that was sold during the Farms '88 case. After Farms '97 was dismissed, Mr. Leija signed the Farms '98 Official Forms, schedules and statement of financial affairs, *in blank* knowing that the attorney would again use the Farms '88 and '97 information to complete those forms for filing with the court. His attorney apparently reproduced the Farms '97 schedules, with some minor redactions and type-over changes, for filing in the Farms '98 case. Mr. Leija testified that he did not review the completed Farms '98 schedules before they were filed and did not discover the error until the 341 meeting. He subsequently filed amended schedules in Farms '98. However, Mr. Leija's own testimony at trial confirms the inaccuracy of the original Farms '98 schedules.

*Applicable Law*

Bankruptcy Code section 727(a) limits a debtor's right to receive a discharge on specific grounds, including the knowing and fraudulent filing of a false oath in connection with another bankruptcy case:

"(a) The court shall grant the debtor a discharge, unless—

. . .

(4) the debtor *knowingly and fraudulently,* in or in connection with the case—

(A) *made a false oath or account ...* or

. . .

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition or during the case, in *connection with another case,* under this title ... concerning an insider ...." (emphasis added)

◾ Discharge under Bankruptcy Code section 727 is a privilege, not a right, and may only be granted to the honest debtor. *Dubrowsky v. Perlbinder (In re Dubrowsky)* 244 B.R. 560, 572 (E.D.N.Y.2000) (citing *In re Sicari,* 187 B.R. 861, 880 (Bankr. S.D.N.Y.1994)), (citing In *re McManus,* 112 B.R. 773, 775 (Bankr.E.D.Va.1990) and *In re Tabibian,* 289 F.2d 793, 794 (2nd Cir.1961)).

◾ The debtor's discharge can be denied under Bankruptcy Code section 727(a)(4)(A), only if he knowingly and fraudulently made a false oath, relating to a material fact. The burden of proof rests on the trustee. *Boroff v. Tully (In re Tully)* 818 F.2d 106, 110 (1st Cir.1987). The standard of proof in a dischargeability action is the preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

◾ It has long been recognized that, ... the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction .... '[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure.' *Tully,* 818 F.2d at 110.

◾ The party objecting to the discharge based on erroneous bankruptcy schedules must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions. *In re Dubrowsky,* 244 B.R. at 571–572 (citing *In re Kelly,* 135 B.R. 459, 461 (Bankr.S.D.N.Y.1992), (citing *In re Seablom* 45 B.R. 445, 449 (Bankr.D.N.D.1984))). However, under Bankruptcy Code section 727(a)(4)(A), "... a reckless indifference to the truth is sufficient to sustain an action for fraud." *Dubrowsky* at 572 (citing *In re Kaiser,* 722 F.2d 1574, 1583 (2d Cir.1983)).

◾ "The statutory requirement of 'knowingly' mandates only that the defendant's act be voluntary and intentional—it does not require that a defendant know that the conduct violates the law. The defendant's reckless indifference to the truth is sufficient to sustain a cause of action under Section 727(a)(4)(A)." *Castillo v. Casado (In re Casado)* 187 B.R. 446, 450 (Bankr.E.D.N.Y.1995). .

*Leija's Unsworn Verification of the Farms '98 Schedules and Statement of Affairs Was an "Oath" Within the Meaning of Section 727(a)(4)(A).*

The term "oath" is defined as:

1. A solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound to a promise. The person making the oath

implicitly invites punishment if the statement is untrue or the promise is broken.... 2. A statement or promise made by such a declaration. 3. A form of words used for such a declaration. 4. A formal declaration made solemn without a swearing to God or a revered person or thing; AFFIRMATION. *Blacks Law Dictionary* (Seventh Edition) West Publishing, 1999.

The Bankruptcy Code requires a debtor to file documents containing specific information regarding the debtor's assets and its financial affairs. Specifically, Bankruptcy Code section 521 states in pertinent part:

"The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs...."

 Federal Rule of Bankruptcy Procedure 1008 requires that all bankruptcy petitions, lists, schedules, statements and amendments thereto *shall be verified or contain an unsworn declaration* as provided in 28 U.S.C. § 1746. The use of an unsworn declaration to verify the debtor's petition, schedules, and statement of affairs must be subscribed by the declarant as true under penalty of perjury and is recognized by law to have "like force and effect" as a sworn verification, oath or affidavit (28 U.S.C. § 1746).

Federal Rule of Bankruptcy Procedure 9009 prescribes the official forms to be used for bankruptcy pleadings as follows: "The Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate.... *The forms shall be construed to be consistent with these rules and the Code.*" (emphasis added)

Several of the Official Forms, specifically including the petition, schedules, and statement of financial affairs at issue here, utilize an *unsworn declaration* under penalty of perjury for verification in compliance with Federal Rule of Bankruptcy Procedure 1008.

Here, the Farms '98 schedules and statement of financial affairs conformed to the Official Forms. Both were verified with *unsworn* declarations dated January 20, 1999. Both were executed by Mr. Leija under penalty of perjury in his capacity as an officer of FLF. Specifically, the Farms '98 schedules include a separate "DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION" which states,

"I, Francisco Javier Leija, the President of the Corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing Summary and Schedules, consisting of [blank] sheets, and that they are true and correct to the best my knowledge, information and belief."

Similarly, the Farms '98 statement of financial affairs contains a "DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION" which states,

"I declare under penalty of Perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief."

Since the Official Forms include unsworn declarations under penalty of perjury, and since they must be construed consistent with the Bankruptcy Code, the court finds and concludes that the term "oath" in Bankruptcy Code section 727(a)(4)(A) necessarily includes the unsworn declarations prescribed in the Official Forms. To hold otherwise would vir-

tually nullify section 727(a)(4)(A) and would render Federal Rule of Bankruptcy Procedure 1008 meaningless. Accordingly, Leija's execution of the Farms '98 forms constituted the making of an "oath" in connection with the Farms '98 case for purposes of section 727(a)(4)(A). Because bankruptcy pleadings must be verified by law, the court finds and concludes that the verification itself is a material representation of fact—that the debtor had read the pleading and that the information was true and correct to the best of the debtor's information and belief.

*Leija's Signing of Blank Bankruptcy Schedules in the Farms '98 Case Constitutes a Knowing and Fraudulent "False Oath" Under Section 727(a)(4)(A).*

▮▮▮▮ To complete the analysis of this matter, the court need look no further that Mr. Leija's own testimony given to explain the ambiguities and errors in the Farms '98 bankruptcy schedules. When confronted by the similarity between the Farms '97 and Farms '98 schedules, Mr. Leija testified that he had provided his attorney with copies of the Farms '88 and Farms '97 schedules containing the information about his assets and financial affairs and subsequently signed the Farms '98 Official Forms *in blank*. As a result, the Farms '98 schedules were completed with the Farms '88 and '97 information *after* Mr. Leija signed them. Mr. Leija did not review the Farms '98 schedules for truthfulness and accuracy before they were filed.

The verification clauses in the Official Forms which Mr. Leija signed under penalty of perjury clearly represent that Mr. Leija had read the information in the documents and that they were "true and correct to the best of my information and belief." If the Farms '98 pleadings were still blank when Mr. Leija signed them, then he could not have read them and he could not have formed a reasonable belief

regarding their truthfulness and accuracy. The unsworn verifications themselves are therefore materially "false oaths." Further, the execution of those documents in blank was intended to perpetrate a fraud on the court—to give the appearance that the documents were truthful and accurate when they in fact were not.

The courts have generally recognized that failure to read the schedules is not a defense to an action under Bankruptcy Code section 727(a)(4)(A). *Equibank v. Ward (In re Ward)*, 92 B.R. 644, 647 (Bankr.W.D.Pa.1988). Nor is the "advice of counsel" a defense when the erroneous information should have been evident to the debtor. *Tully*, 818 F.2d at 111 (citing *In re Mascolo* 505 F.2d 274, 277 n. 4 (1st Cir.1974)).

"A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Id.*

The majority of the cases wrestling with this issue have looked to the content of the schedules and statement of financial affairs and tried to determine whether the omitted or erroneous disclosures rise the level of a "false oath." This case is somewhat different since Leija verified the Farms '98 pleadings *in blank;* the court does not need to look to the truthfulness of the information in those documents and does not need to consider Leija's efforts to explain the disposition of FLF's assets. The Farms '98 verifications themselves were *materially false oaths*. The actual content of the documents was added later by the attorney. The truthfulness and accuracy of that information, and the reason for any errors, are irrelevant to the "false oath" issue when the debtor verifies the documents in blank.

Sworn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will

collapse if debtors are not forthcoming. The record in this case shows, at the very least, cavalier indifference and a pattern of disdain for the truth. Meaningful disclosure was accorded too low a priority. *Id.* at 112.

If Mr. Leija read the verifications before signing them, the error would have been obvious. If Mr. Leija did not read the verifications before signing them, then his actions were at best, recklessly indifferent. Either way, the shoddy practice of verifying *blank* pleadings to be filed in a judicial proceeding cannot be condoned by this court.

*Conclusion*

■ Based on the foregoing, the court finds and concludes that FLF is an insider of Mr. Leija within the meaning of 11 U.S.C. § 101(31)(A)(iv). Mr. Leija's verification of the court's Official Forms, in blank, and in contemplation that they would be filed in the Farms '98 bankruptcy proceeding, constitutes the "knowing and fraudulent making of a false oath," in connection with another bankruptcy case relating to an insider. The misrepresentation of fact was material and it was done within one year of the commencement of this bankruptcy proceeding. Accordingly, Mr. Leija's discharge shall be denied pursuant to Bankruptcy Code sections 727(a)(4)(A) and 727(a)(7). A separate judgment shall be entered herewith.